SLAVONIAN MINING Co. v. PERASICH and others.

(*Circuit Court, D. Nevada.* May 16, 1881.)

1. MINING LAW—AMENDMENT—SECTION 2324, REV. ST., JANUARY 22, 1880.

This amendment does not act retrospectively, so as to save a claim from a forfeiture incurred before its passage.

2. SAME—RELOCATION.

There cannot be any relocation, before the period within which work is required has expired, which can be made valid by a failure to work on the part of the original locators.

3. SAME—RESUMPTION OF WORK.

There must be a *bona fide* attempt, at least, to resume. Threats seven miles from the claim, without any act towards carrying them out, are not a sufficient excuse for non-performance.

4. SAME—SAME.

*Held, also,* that if the relocators had entered, and were in actual possession after a forfeiture, although they had not relocated, the original locators would have no right to make a forcible entry for the purpose of resuming work.

*George E. Harpham,* for plaintiff.

*Walter H. Tompkins* and *A. C. Ellis,* for defendants.

HILLYER, D. J. This is ejectment for a mining claim in Columbus mining district, Nevada. A jury has been waived by written stipulation. It is submitted to the court mainly upon an agreed statement of facts; the only disputed facts

being in regard to the plaintiff's excuse for not doing work in 1880, after the claim was forfeited under the mining laws of the United States. It is agreed that no work was in fact done on the claim by the plaintiff after October, 1878. The claim was originally located January 3, 1876. January 22, 1880, congress amended the mining law by adding the following words to section 2324, Rev. St.:

"*Provided*, that the period within which the work required to be done annually on all unpatented mineral claims shall commence on the first day of January succeeding the date of location of such claim; and this section shall apply to all claims located since the tenth day of May, A. D. 1872."

It was faintly argued that this proviso gave the plaintiff the whole of the year 1880 in which to do work, although none had been done in 1879. The object of this proviso was to make an uniform period for the annual work on all claims located since May 10, 1872, and fixed the first of January next succeeding the date of location as the time of its commencement. A claim located as this was, January 3, 1876, would not require any labor to be done on it under this proviso before December 31, 1877. Before the proviso, work had to be done by January 2, 1877. But in this case no question is made as to the work being done up to January 3, 1880. The last work done in October, 1878, held the claim until January 3, 1879. As the law then stood, work was required before January 3, 1880, and, not having been done, the claim was forfeited unless work were resumed as the law provided. The law of January 22, 1880, did not, in my judgment, act retrospectively, and its first application to the plaintiff's claim would have been January 1, 1881. Claims located prior to May 10, 1872, had already been provided for by extending the time for the annual expenditure thereon to January 1, 1875. 18 St. 61. By applying the law of January 22, 1880, to all claims located since May 10, 1872, all cases were provided for, and a rule for all annual expenditures established uniform with the calendar year. This is the view of the general land-office, and is undoubtedly correct. Sickles' Mining Laws and Decisions, 1881, pp. 392, 393. Thus there

was no forfeiture of the plaintiff's claim until January 3, 1880.

In September, 1879, the defendant Samuel Vacovich relocated this claim. This, it is admitted, was a premature location, but it is claimed by the defendants to have been validated after January 3, 1880, by the failure to do the annual work on the part of plaintiff. But this, in my judgment, is a wrong view. Vacovich, before January 3, 1880, was a trespasser, and could not lay the foundation of any valid claim to this mine before that date. Until then the plaintiff was not in default, and its ground was not subject to relocation for the failure to do the annual work.

It would never do to permit an entry upon a mining claim, before the owner of it was in default, for the purpose of making a provisional location, to be valid or worthless according as the owner failed or not to do the annual work subsequently. The Vacovich location was a mere nullity. On March 19, 1880, Mr. Koenecke, president of the plaintiff, by authority of the company, went to Candalaria to do the annual work, and it is admitted that at this time the claim was forfeited and subject to relocation, and that unless what was done by Mr. Koenecke in March, and by Mr. Harpham in June following, amounted to a resumption of work on the claim, there can be no recovery. The provision of section 2324, Rev. St., is that—

"The claim or mine upon which such failure (to work) occurred shall be open to relocation *in the same manner as if no location of the same had ever been made: provided*, that the original locators, their heirs, assigns, or legal representatives have not resumed work upon the claim after failure, and before such location."

Mr. Koeneke testifies—

That he visited the mine March 19, 1880, and that it is situated about a mile from the town of Candalaria. About half way between the mine and Candalaria he met Thomas Perasich, one of the defendants, and told him he was going to do the annual work on the mine; that Perasich there told him that he was the sole owner of the mine, and could not permit any one to work on it; that he would shoot any one who attempted to work; and that he did not do any work on the mine because he was threatened with shooting. It does not appear that Perasich did, in fact, offer any violence, or that he prevented Mr. Koeneke from going on to the

mine. Mr. Koeneke states further that he did go on to the mine, and finding a padlock on the door of the tunnel abandoned the idea of work.

Mr. Harpham testified:

He was sent down by the board of directors in June, 1880, as agent and attorney at law; that before going to Candalaria he stopped in Carson and commenced this suit, taking the summons along, to be served in case he was not allowed to do the annual work on the mine for the year; that on his arrival at Candalaria he made inquiries touching the locality of the mine, and went out to it or in its vicinity. He says, on cross-examination, he does not know whether he was on the claim, or within a quarter of a mile of it, but saw the mouth of the tunnel closed up. He further testifies that without attempting to do any work, although in no way molested, he next sought the defendants, and sought permission of Thomas Perasich to work before trying to do any; that he found Thomas Perasich at the Tilden mine, some 10 or 12 miles from Candalaria, and at that distance from the mine told him he had come down to do the annual work for the year; that Perasich there told him that the mine was his, and he was in possession, and would blow the top of anybody's head off who tried to do work on the claim for plaintiff; that the deputy marshal was with him, and upon this he had him serve the summons. He also testifies that from what he heard about Candalaria he did not think it would be safe to try to work.

This is a favorable statement of the evidence for the plaintiff. Both Perasich and Gregovich deny that any threats were made, and Perasich denies that there was any padlock on the tunnel door. There is also some conflict as to what occurred at the Tilden mine. Perasich denies that he said he was in possession, and denies that he was in fact in possession at the time this suit was commenced. But let us assume that the statements of Mr. Koeneke and Mr. Harpham are absolutely correct, and it does not follow that what they did amounts to a resumption of work as the law requires. Neither states that there was any offer of violence even at that distance from the mine. No weapon of any kind was shown, and there was no demonstration by any act, so far as testimony shows, calculated to alarm, beyond these naked threats, made in one instance a half a mile and in the other seven to twelve miles from the ground in controversy. Moreover, it appears by the testimony of both that they went to the mine during their stay at Candalaria, and were altogether unmolested. Why no attempt was made to work at these times does not appear. Words, unaccompanied by any overt

act showing a present intention of carrying them into effect, even on the ground, would hardly justify the plaintiff in declining to make some effort to work. But unless the threats were made on the ground, or so near as to amount to the same thing, they certainly ought not to have that effect. The threats made to Mr. Koeneke by one of the defendants, a half a mile from the mine, do not seem to have had a very serious effect on Mr. Koeneke or the other directors, for they still thought in June that the work might be done.

Mr. Harpham says he was to try to do the work, and only serve the papers in case he was not allowed to do it, and that he had a considerable sum of money with him—$100 or so—with which to carry out that purpose. Harpham was not in any way molested when he visited the mine. He made no attempt to work, but sought Perasich at the Tilden mine, seven to twelve miles away, to obtain his permission. I have no doubt that at this time if Harpham, instead of seeking for Perasich, had made a real effort to perform the labor which the law requires, he would have succeeded. But, whether he would or not, it certainly seems to me to have been his duty to try. Yet, although not molested by any one, he is not sure that he got on to the claim while he was in Candalaria. At this time the plaintiff might have resumed work, and complied with the law if it were done peaceably. It had no need to ask permission of any one. Either its old claim was good or it had none. It might enter by virtue of its old location so long as the ground remained unappropriated. Whenever there has been such force as excuses from performance it has been on the ground. I have not been referred by counsel to any authorities on this point.

In *Robinson* v. *Imperial*, 5 Nev. 44, De Groat, while engaged in fencing his land, under a law which required him to fence within one year, was forcibly stopped by Black and Eastman, and himself and employes driven from the premises. And in *Alford* v. *Dewin*, 1 Nev. 207–14, the defendants had entered, and the plaintiffs, being wrongfully ousted, could not fence. I will not say that there may not be threats on the ground, unaccompanied by acts, of so serious and

menacing a character as to satisfy a man of ordinary prudence it would be unsafe to begin work, and in such case it might be an excuse for non-performance. But that is not this case. Had Harpham, instead of visiting Perasich at the Tilden mine, gone to plaintiff's mine and begun work, at the worst he would have had to leave when ordered off. There is not the least probability that he would have been injured in his person if he had been willing to do this without resistance. I have no doubt, from the testimony, that had Harpham at this time commenced work on the claim resolutely, the defendants would never have interfered with him. At all events, I find that his fears of personal violence had no sufficient foundation, and did not justify him in declining to make an effort. It follows that the claim was open to relocation on the twenty-seventh day of September, 1880, when, according to the agreed statement of facts, it was relocated by the defendant Thomas Perasich.

Another view of this case is this: The complaint alleges an ouster on the twenty-fifth day of November, 1879, by the defendants. Now, it would have been sufficient to have shown such an ouster, and, if continued as alleged to the time of bringing this suit, it would have been unnecessary to show that work had been performed by the plaintiff so long as the defendants withheld possession; because, in November, 1879, there had been no forfeiture. The plaintiff, then, should have stood upon proof of these facts, if they could have been established. But I presume that it had no sufficient proof of them, for it was distinctly admitted, as has been before stated, that unless work was done after January 3, 1879, or such an attempt to work as amounted to the same thing, the claim had been forfeited. The ouster, admitting one to have been proved, was in June; the proof consisting of an alleged statement by Thomas Perasich, seven miles from the claim, that he was in possession. But the plaintiff sought to establish a possession in defendants, and claims that it did so. It was obliged to show possession in the defendants at the time of bringing this suit or fail in it. Upon its own theory, that the defendants were in possession,

claiming the ground, I do not see how it can justify an entry upon the posession of another, who, by the terms of the law, has the same right to relocate the claim that the plaintiff or its grantors had to locate it originally. The language of the law is that after a failure to work—and it is conceded there was a failure in this case—the claim shall be "open to relocation in the same manner as if no location of the same had ever been made," with a proviso that the original locators have not resumed work after failure and before such location. Did congress contemplate anything besides a peaceable entry and resumption of work before an entry by the relocators? I think not. Congress never could have meant to enact a law which would encourage breaches of the peace, as this would if the original locators might resume work at any time before a formal relocation by those who had entered after forfeiture for the purpose of relocation.

The relocator, after entry for the purpose of locating, would be in the same predicament as the original locator was when he took possession in the first instance, and would have precisely the same rights,—the same right to hold the ground against trespassers, upon the basis of his *possessio pedis*,—without complying with the local rules and customs, or indeed with the law of congress. *Atherton* v. *Fowler*, 96 U. S. 513. So that, after a forfeiture incurred, the original locator, it seems to me, cannot put himself in a position to maintain eject- ment, except by actually resuming work before an entry by a person seeking to relocate for the forfeiture, and an ouster by such person; for clearly the defendants in this case, finding no one on the ground, had a right to take possession after January 3, 1880. After that date, and before resuming work, there could be no ouster of the plaintiff. Nor would the plaintiff, after forfeiture incurred, be justified in making an entry on this mining ground while in the possession of another. The threats of Perasich were, therefore, upon the theory of plaintiff that he was in possession, nothing wrong if this view is right.

Let judgment be entered for defendants for costs.