[No. 1549.]

D.. H. SISSON, L. S. BRIDGES, A. F. SISSON AND J. L. BARRON, APPELLANTS, v. ROBERT SOMMERS AND R. M. NORRIS, RESPONDENTS.

MINES—LOCATIONS—NATIONAL, STATE AND LOCAL LAWS AND REGULATIONS. To enable a party to maintain a right to a mining claim after it has been acquired, he must continue to comply substantially with the laws of congress and of the state, and the local regulations of miners in force in the district where the claim is located.

IDEM—IDEM—FORFEITURE—RELOCATION. A failure to comply with the laws and regulations in force in the district, whether national, state or local, works a forfeiture of the claim, whether such laws or regulations so provide or not, and the same becomes subject to location by any qualified locator.

IDEM—IDEM—LOCATION WORK—DISCOVERY SHAFT—CONFLICT OF LAWS. Section 2 of Statutes of 1897, p. 103, requiring the locator of a mine, in order to perfect his location, to sink a discovery shaft, or make a cut of a certain depth, within ninety days after the posting of notice of location, is not in conflict with the act of congress, which gives the locator one year in which to do the one hundred dollars' worth of labor prescribed by congress as a condition of holding the claim.

IDEM—IDEM—AUTHORITY OF STATE TO REGULATE MINING LOCATIONS. The state cannot, by its legislation, dispense with the performance of the conditions imposed by national law, in order to hold a mining claim, but it may require a reasonable additional amount of work to be done annually, or to complete the location, and, after location, a reasonable additional amount of work within a reasonable time, less than the time prescribed by congress for the annual expenditure.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney*, District Judge:

Action by D. H. Sisson, L. S. Bridges, A. F. Sisson and J. L. Barron against Robert Sommers and R. M. Norris, for damages for trespassing on a mining claim, and for an injunction. From a judgment for defendants, and an order denying a new trial, plaintiffs appeal. Affirmed.

The facts sufficiently appear in the opinion.

*Wren & Julien* and *Goodwin & Dodge*, for Appellants:

I. If his location is held invalid, it must be upon the ground that locators must comply strictly with the very letter of the statute. This, we submit, would be contrary to the spirit of the decisions of the courts in almost every mining state and territory of the Union, and especially contrary to the liberal construction of mining statutes and mining laws heretofore adopted by this court. It is no easy matter to determine just to what extent the locator of a mining claim may be excused from strictly complying with mining statutes or mining regulations, but, it seems to us, that where there has been a substantial compliance, in evident good faith, as in this case, a comparatively trifling failure to conform strictly with the laws and regulations, should be overlooked, and especially in a case where subsequent locators, or jumpers, knew of the prior location of other parties. As an illustration of the liberality of courts, we call attention to the liberality shown in upholding mining locations in the case of defective notices, where there was evidently an honest intent to locate and hold a mining claim, under mining regulations and customs, and under statutes.

II. The testimony, with regard to the dimensions of the cut, was conflicting. The witnesses for the plaintiffs testified that the cut, prior to the commencement of the action, was nearly twelve feet in length measured horizontally, and about nine feet, or a little over, in depth at the deepest place. The witnesses for the defense testified that it was about eleven feet in length, and about eight feet in depth at the deepest place, as we now remember the testimony. This difference in the testimony, as to the depth of the cut, is accounted for by the fact that the cut was partially filled at the time

defendants made their measurements, and had been cleaned out when the witnesses for the plaintiffs made their measurements.    In either case, plaintiffs had, in good faith, substantially complied with the state law.

III.    By the cut, the lode was exposed for a length of ten or twelve feet, and a depth of nearly ten feet.    Precisely what the object of the state legislature was in providing for the making of a shaft or cut, it is hard to determine.    We may fairly assume that the object was to require locators to expose a lode sufficiently to make it reasonably certain that there was a lode.    Outside of this " we may let our fancy play."    As to the other objects, the locator is required to sink a discovery shaft, so as to expose the vein or lode.    Under this provision, the lode may be exposed at a depth of three or ten feet, it don't matter which, so far as compliance with the law is concerned.    In lieu of this, the locator may make a crosscut or tunnel which cuts the lode at a depth of ten feet, or an open cut of at least ten feet in length along the lode.

IV.    It is past finding out why a locator should be required to make a crosscut or tunnel that cuts the lode at the depth of at least ten feet, and should not be required to make a cut along the lode for ten feet, without specifying the depth or dimensions of the cut, or why he should be required to sink a shaft ten feet in depth after he has exposed the lode at a depth of perhaps three feet, and not be required to cut the lode at the depth of ten feet.    If any intention is to be gathered from these incongruous provisions, it is that the locator shall be required to make a sufficient exposure of the lode to make it certain that there is a lode.    In this case the cut was neither made along the lode, nor across the lode, but it did expose the lode at a depth of nearly ten feet, and ran diagonally across or along the lode for a distance of twelve or fifteen feet, measured on the outcropping of the lode. This was more than a substantial exposure of the lode for a distance of ten feet, and was therefore a substantial compliance with the state law, and was certainly a good deal more than a substantial compliance with the congressional law. But we contend that the state law is in violation of the federal statute.

V. Since the discovery of gold in California the courts have held that prior possession of public lands, mineral, agricultural and timber, was *prima facie* evidence of title, or the right to the possession. In respect to the mining lands, the courts not only upheld the rights of the first occupant under mining rules and regulations, but they also upheld the right of the first occupant where there were no miners' rules or regulations. (*English* v. *Johnson,* 17 Cal. *supra.*)

VI. In respect to the agricultural and timber lands, after the admission of California as a state, the legislature passed acts providing for a mode of securing possessory rights, but the courts still held that possessory rights might be acquired by taking actual possession of these lands, without complying with the possessory acts of the legislature. The decisions of California courts were followed by the supreme court of this state upon its organization, and like acts regulating possessory titles to the timber and agricultural lands were passed by the legislature of this state, and those acts and the decisions of our supreme court are still the law in this state in respect to such lands.

VII. These decisions were made, no doubt, upon the theory that the state had a right to legislate in reference to public lands of all kinds, as long as the decisions and legislation did not interfere with the primary disposal of public lands. But while no legislation of congress has attempted to interfere with the possessory titles to agricultural and timber lands, that body has in a great measure limited the right of the state to regulate the conditions upon which the right to the possession and occupation of the mineral lands shall be acquired and maintained.

VIII. In the congressional act it is provided that, within certain limits, state legislation must be confined, in terms. It provides by implication, at least, that the state legislatures may regulate the mode of acquiring and maintaining possession of mining claims, provided that the legislation is not in conflict, or inconsistent, with the laws of the United States. It follows that, if laws enacted by the state legislature are in conflict with or inconsistent with the laws of congress, they are unconstitutional and void. The act of congress provides that not less than $100 worth of work shall be done

on a claim located after the passage of the law, annually. Clearly this gives the locator of a mining claim one year, at least, after he has made his location, to do the necessary amount of work, in order to hold it. An act of the legislature limiting the time in which he is required to do this work, we submit, is in conflict with and inconsistent with the acts of congress. Under this provision of the act of congress the legislature would be authorized, no doubt, to require locators to do more than one hundred dollars' worth of work annually, but not to limit the time within which it should be done.

IX. The act of the legislature being inconsistent with the act of congress, the plaintiffs still have ample time to do the necessary work upon the Morning Star claim to hold it. (*The O. C. of the W. & K. Co.* v. *Winthrop Co.*, 60 Cal. 631; 4 Colo. 112; *Golden Fleece* v. *C. C. Co.*, 12 Nev. 312–22.)

X. If this state statute is not in conflict with the federal statute, still, under the liberal rule invoked by Lindley, the state statute simply requiring something to be done in excess of the federal statute, it should be held directory merely, where there appears to have been an effort to honestly comply with the state statute.

*Robert M. Clarke*, for Respondents:

I. The discovery shaft, or cut, which is a substitute therefor, is not of the dimensions required by the laws of Nevada, and for this reason the location of the Morning Star is invalid. Section 2 of the act of March 16, 1897 (Stats. 1897, p. 103), provides: " Before the expiration of ninety days from the posting of such notice upon the claim, the locator must sink a discovery shaft upon the claim located to a depth of at least ten feet from the lowest part of the rim of such shaft at the surface, and deeper, if necessary, to show by such work a lode, or deposit of mineral in place." "A cut or crosscut or tunnel which cuts the lode at the depth of ten feet, or an open cut of at least ten feet in length along the lode, from the point where the lode may be in any manner discovered, is equivalent to the discovery shaft." The most casual reading of the statute in question will make it apparent that it is intended thereby to require the locator,

either by shaft or cut, to expose the vein, either on its downward or horizontal course, for a distance of at least ten feet; and for the reason that such development is necessary to determine whether the discovery is or not a true lode or vein. A mere surface crack, or joint, or slip, or seam, or boulder, or pocket, or vug, might extend, and, as we know, often does extend, "five feet." But, as we also know, these things are not lodes or veins within the meaning of the law any more than a potato hill is a mountain..

II. The act of the legislature of Nevada, approved March 16, 1897 (Stats. 1897, p. 103), which requires notice of location, record of location and discovery shaft, is not in conflict with the act of congress, and is a valid and operative law. Of all the points involved in this case this is the most important, for upon it depend most of the questions already discussed. Moreover, if the statute in question be not invalid, its provisions are conclusive against plaintiffs' right. That the power of the state to pass the statute in question exists, is manifest for three reasons: First—Because in the particulars involved in this discussion, the power is not exercised by congress. Second—It is not denied to the states. Third—It is granted by necessary implication. (See section 2324, Rev. Stats. U. S.)

III. It will be observed that the act of congress neither requires a notice of location to be posted, nor the record of location to be made, nor a discovery shaft to be sunk within the limits of the claim. Upon these points it is silent, and it is precisely as to these points that the state legislature has legislated, and it is to the validity of this legislation that the inquiry is directed. Manifestly, congress had it in view that the states and territories might, and would, make laws upon the subject being considered by it, namely, the location, manner of recording, and amount of work necessary to hold a mining claim. It is clearly implied, from the words of the statute, that the states and territories may legislate upon subjects enumerated in all respects not in conflict with the provisions of the act of congress. Although what the legislatures of the various states and territories have done under these provisions by way of prescribing additional things to govern the location, manner of recording, and work neces-

sary to hold mining claims, is not conclusive upon the court, yet it is worthy of consideration, and a proper element to be considered in determining the legislative power.

IV.   It is unreasonable to suppose that the legislatures of so many states and territories would pass laws upon so important a subject, without the constitutional power to do so, and still more unreasonable to suppose that such laws should not be questioned by the courts, but, on the contrary, should be acquiesced in and enforced by all the departments of government, judicial and executive, as well as legislative.

V.   Statutes- containing requirements almost identical with those prescribed by the statutes of Nevada have been adopted, approved and enforced in nearly all the mining states and territories.   Our own act is borrowed—indeed, literally copied—from the State of Colorado, where it has been long in force, and has been more than once upheld by the supreme court of that state.   (Lindley on Mines, secs. 248, 249, 250; Barringer on Mines, p. 216, 234, 235.)

By the Court, Bonnifield, C. J.:

This action was brought to recover damages of the defendants for the alleged wrongful entering upon the Morning Star mining claim, and extracting and removing therefrom large quantities of valuable mineral-bearing rock, and to obtain a perpetual injunction restraining defendants from continuing the trespass.   By the complaint the claim is particularly described by metes and bounds, and as being situated in Olinghouse cañon, White Horse mining district, Washoe county, State of Nevada, and it is alleged, among other things, that the plaintiffs were, are now, and ever since the 24th day of May, 1897, have been, the owners, in the possession, and entitled to the possession, of said mining claim.

The answer puts in issue all the material allegations of the complaint, and alleges all the facts necessary to constitute a valid mining location by the defendants, December 22, 1897, of the mining ground described in the complaint, and named by defendants the " Forlorn Hope vein."   And it is alleged that the defendants are the owners, in the possession, and entitled to the possession, of said mining claim.   The sufficiency of the evidence on the part of the defendants is not

questioned by the plaintiffs, except that it is claimed that the ground was not subject to location by them.

The case was tried by the court sitting without a jury. The trial resulted in a judgment for the defendants. The plaintiffs appeal from the judgment, and from the order of the court denying their motion for new trial.

The plaintiffs' claim to said mining ground is based upon a location thereof claimed to have been made the 22d day of May, 1897, by one of the plaintiffs, and they introduced evidence to prove the performance of every act necessary to constitute a valid location, and every condition requisite to continue the right acquired thereby, under the laws of congress and of this state. The sufficiency of such evidence in every material particular was contested at the trial, and is assailed by counsel of defendants on appeal, by elaborate argument, while counsel for plaintiffs maintain the sufficiency of the evidence to prove every material fact by like argument.

As we understand it, the court found for the plaintiffs on all the facts except as to the doing of the discovery work prescribed by Stats. 1897, p. 103, which provides: "Sec. 2. Before the expiration of ninety days from the posting of such notice upon the claim the locator must sink a discovery shaft upon the claim located to the depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper if necessary, to show by such work a lode deposit of mineral in place. A cut, or crosscut, or tunnel which cuts the lode at a depth of ten feet, or an open cut of at least ten feet in length along the lode from the point where the lode may be in any manner discovered, is equivalent to a discovery shaft."

The court found, in effect, that the discovery work done by plaintiffs within the ninety days was not sufficient under said statute, and that no further work was done by the plaintiffs prior to the entry of the defendants upon said mining claim on the 22d day of December, 1897.

As conclusion of law the court found that the plaintiffs' location of the Morning Star mining claim was not completed prior to the entry of the defendants, on account of the lack of the amount of discovery work required by said

statute, and gave judgment for defendants accordingly. Counsel argue and urge that the work performed by the plaintiffs was a substantial compliance with said statute. By stipulation of the parties the judge of the trial court visited the mining claim to determine from actual inspection and observation the sufficiency of the discovery work done by the plaintiffs, and to determine all other disputed matters' of fact so far as the same might be determined by such examination.

We do not consider that we are warranted by the evidence to disturb the finding of such facts by the court.

The validity of the provisions of said statute with reference to discovery work is directly involved in this case, and presented for determination on this appeal. The determination of this question will dispose of the case, and we do not deem it material to consider or pass upon the many other questions discussed by counsel.

In Colorado and several other states the work as specified in the Nevada statute is required to be performed as a prerequisite to the completion of a location. The same character of work is required in other states, but it is not made, in terms at least, necessary to complete a location, but rather, as we think, a condition to the continuance of the right acquired by location.

We regard it as entirely immaterial whether, under state legislation in reference to discovery work, the performance thereof be regarded as a necessary act of location, or as a condition to the continuance of the right after location. If such legislation is valid in the one case, it is in the other.

In *Erhart* v. *Boaro*, 113 U. S. 527, the Supreme Court of the United States recognized the validity of the Colorado act regarding such discovery work. We regard that case as sufficient authority on the subject. Many cases maintaining the validity of such state legislation are cited by Barringer and Adams in their work on the Law of Mines and Mining.

To enable a party to maintain a right to a mining claim after the right is acquired, it is necessary that the party continue substantially to comply, not only with the laws of congress, but with the valid laws of the state and valid rules

established by the miners, in force in the district where the claim is situated upon which such right depends.

Failure to comply with such laws and rules works a forfeiture, whether the laws and rules provide for forfeiture for non-compliance or not, and the mining claim becomes subject to location by any qualified locator. (*Mallett* v. *Uncle Sam M. Co.*, 1 Nev. 188; *Oreamuno* v. *Uncle Sam M. Co.*, 1 Nev. 215; Barring. & A. Mines, 300.)

Counsel for appellants admit that the state legislature may regulate the mode of acquiring and maintaining possession of mining claims, provided that the legislation is not in conflict with the laws of the United States, but contend that, as the act of congress gives the locator of a mine one year at least after he has made his location to do the required amount of work in order to hold it, an act of the legislature limiting the time is in conflict with the act of congress. They say, "although, under this provision of the act of congress, the legislature would be authorized, no doubt, to require locators to do more than one hundred dollars' worth of work annually, but not to limit the time within which it should be done."

The contention that, although the legislature may properly require a greater amount of work than congress has prescribed, it cannot limit the time in which to do it, does not strike us with any great force of reason. Congress has made the one hundred dollars' worth of labor the minimum amount to be done, and the time named is the maximum time for the performance of the work without the risk of forfeiture. We think the legislature may require a reasonable additional amount of work to be done annually, and a reasonable amount of work to complete the location (113 U. S. 527), or, after location, a reasonable additional amount of work within a reasonable time, less than the time named by congress for the annual expenditure, as a condition to the continuance of the right acquired by location of the mine.

"The state may not, by its legislation, dispense with the performance of the conditions imposed by national law, nor relieve the locator from obligations of performing in good faith those acts which are declared by it to be essential to the maintenance and perpetuation of the estate acquired by location. Within these limits the state may legislate."

(Lindl. Mines. 249.) "No state has the right to decrease the amount of labor which congressional law requires to be done annually on a mining claim. The law clearly implies that the states and territories, or the district organizations in the absence of state or territorial legislation, may increase the amount of such labor." (Id. 250.)

The congressional law, we think, as clearly implies that the states and territories may require a reasonable amount of work to be done within a reasonable time after location independently of the annual assessment work prescribed by congress.

We are aware that the policy of the Nevada statute is questioned by many miners and prospectors, but the courts are not to question such policy. The question of policy is solely for the legislative department to determine.

The judgment and order appealed from are affirmed.