NORTHMORE v. SIMMONS et al.

(Circuit Court of Appeals, Ninth Circuit.   October 16, 1899.)

No. 487.

MINING CLAIMS— DEVELOPMENT WORK REQUIRED — POWER OF MINING DISTRICT TO REGULATE.

Rev. St. § 2324, as amended by Act Jan. 22, 1880 (21 Stat. 61), providing that the miners of a district may make regulations, not in conflict with the laws of the United States, governing the location, manner of recording, and amount of work necessary to hold possession of a mining claim, subject to the requirement that not less than $100 worth of labor shall be performed or improvements made during each year until a patent has been issued, and further providing by the amendment that "the period within which the work required to be done annually on all unpatented mineral claims shall commence on the first day of January succeeding the date of location of such claim," merely fixes the minimum amount of expenditure exacted by the United States, and the maximum limit of time within which it may be made, leaving to the states and mining districts to prescribe such further regulations or requirements within such limits as they may deem advisable; and a mining district has power to make a regulation requiring a prescribed amount of work to be done within 90 days after a location is made, and making the claim subject to relocation in default of such work, notwithstanding the 90 days may expire before the 1st day of January succeeding the date of location.

Ross, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of California.

Gardiner, Harris & Rodman and W. A. Harris, for appellant.
Gibbon & Halstead and M. L. Hicks, for respondents.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge.   The appellant was the complainant in a bill in which he alleged that on January 9, 1897, he made a discovery of mineral-bearing quartz in place in the Mojave mining district, in the state of California, and that he duly located the same; that there was a mining regulation in said mining district which provided that, "within ninety days of location, a shaft shall be sunk or a tunnel run to a depth of not less than ten feet from the apex of the ledge of mineral-bearing quartz; otherwise, the claim shall be subject to relocation"; that upon April 10, 1897, the defendants entered upon the complainant's said claim, and took possession thereof and located the same, contending that the complainant's rights were forfeited by reason of his failure to "comply with the said mining regulation." On a demurrer to the bill for want of equity, the bill was dismissed. The sole question presented upon the appeal is whether the regulation of the Mojave mining district requiring certain work to be done within 90 days after location is valid.

Section 2324 of the Revised Statutes provides:

"The miners of each mining-district may make regulations not in conflict with the laws of the United States, or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining-claim, subject to the following requirements: * * * On each claim located after the tenth of

May, eighteen hundred and seventy-two, and until a patent has been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year."

The statute was amended on January 22, 1880, so as to read as follows:

"That the period within which the work required to be done annually on all unpatented mineral claims shall commence on the first day of January succeeding the date of location of such claim."

Is the regulation of the Mojave mining district above quoted in conflict with the requirement of the statute that work shall be done or improvements made to the extent of $100 upon each claim within one year after the 1st day of January next succeeding the date of the location? It is contended by the appellant that the statute secures to every locator a fixed period of time within which to make the improvements or expend the labor that are or may be prescribed for the preservation of his right, and that by no state statute or mining regulation can the period be abridged. In view of the language of the statute, and the decisions of the supreme court, so far as they afford light upon its meaning, we are of the opinion that section 2324 was intended to prescribe the minimum amount of expenditure in labor or improvements which was exacted by the United States within a maximum period, and to leave to state legislatures or local mining districts the power to make such reasonable regulations as they might deem advisable, within the prescribed limit; such regulations to be always subject to the provision of the statute that at least the expressed yearly amount in work or improvement must be expended upon the claim, and that, at most, the time for expending the same shall not be extended beyond the designated year. This, we think, is clearly implied in the language of the statute. Miners are therein authorized to make regulations governing the "amount of work necessary to hold possession of a mining claim." The amount of work can be regulated only by increasing or diminishing it. The diminution of it is expressly prohibited. There shall be "not less than one hundred dollars' worth" per annum. It follows that the miners may regulate the amount by increasing it. If the amount may be increased above that which is required by the statute of the United States, no reason is perceived why the time may not be abridged within which a portion of it is to be done, or why any other reasonable regulation may not be required to be complied with within a shorter time than a year. The statute of the United States exacts no discovery shaft, nor any work, as a condition to the location of a claim, or the initiation of the right of a locator. The right of a state legislature to impose such additional work has uniformly been recognized. No difference in principle is discernible between the requirement that such discovery work shall be made as an incident to the location, and the requirement that after location it shall be made as a condition to the subsistence of the same. In either case burdens are imposed upon the locator in addition to the "requirements" of the United States statute. In neither case is the requirement that a shaft be sunk, whether it be denominated a "discovery shaft," or whether it be known by any other name, in conflict with the express

provisions of that statute. The statute was not intended to interfere with the rights of the states or of the local mining districts. It was intended to express the most liberal terms on which the United States would part with its right in mining claims. No state legislature nor local mining regulation may grant more favorable terms than those which are demanded by the statute. It contains the full extent of the "requirements" of the United States. There shall be expended upon the claim at least $100 per annum. No limit is placed upon the amount of work above $100 which may by local mining rule be required from the locator. To provide that the assessment work shall be $200 per annum is not in conflict with the statute; neither is there a conflict if one-half of that amount of work be required within one-half of the time. In Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560, the supreme court recognized the validity of a statute of Colorado (Gen. Laws Colo. 1877, p. 630) declaring that one of the essential acts of locating a claim should consist in sinking a discovery shaft upon the lode. Said the court in that case:

"Before 1866, mining claims upon the public lands were held under regulations adopted by the miners themselves in different localities. These regulations were framed with such just regard for the rights of all seekers of the precious metals, and afforded such complete protection, that they soon received the sanction of the local legislatures and tribunals, and when not in conflict with the laws of the United States, or of the state or territory in which the mining ground was situated, were appealed to for the protection of miners in their respective claims, and the settlement of their controversies. And although since 1866 congress has to some extent legislated on the subject, prescribing the limits of location and appropriation, and the extent of mining ground which one may thus acquire, miners are still permitted, in their respective districts, to make rules and regulations not in conflict with the laws of the United States, or of the state or territory in which the districts are situated, governing the location, manner of recording, and the amount of work necessary to hold possession of a claim. * * * It does not appear in this case that there were any mining regulations in the vicinity of the Hawk lode which affect in any respect the questions involved here. Had such regulations existed, they should have been proved as facts in the case. We are therefore left entirely to the laws of the United States and the laws of Colorado on the subject."

Section 2320, Rev. St., concedes to mining districts the power to diminish the surface width of mining claims from 300 feet on each side of the middle of the vein to 25 feet on each side thereof. In Mining Co. v. Kerr, 130 U. S. 256, 9 Sup. Ct. 511, the supreme court, through Mr. Justice Field, declared that the effect of such a mining regulation "could not be doubted."

A decision directly in point is that of the supreme court of Nevada in the recent case of Sissons v. Sommers, 55 Pac. 829, in which the court had under consideration the provisions of the act of the legislature of that state (Laws 1897, p. 103). The first section of the act prescribed the method of locating a mining claim. It declared that it should consist (1) in "defining the boundaries of the claim in the manner hereinafter described," and (2) "posting a notice of such location at the point of discovery." The second section provided that before the expiration of 90 days from the posting of the notice "the locator must sink a discovery-shaft upon the claim located to the depth of at least ten feet from the lowest part

of the rim of such shaft at the surface, or deeper if necessary, to show by such work a lode deposit in place." It was a provision identical with the regulation of the Mojave mining district which is involved in this case, in that it required the act to be done within 90 days after location. The court, in a carefully considered opinion, said:

"We think the legislature may require a reasonable additional amount of work to be done annually, and a reasonable amount of work to complete the location, or, after location, a reasonable additional amount of work within a reasonable time, less than the time named by congress for the annual expenditure, as a condition to the continuance of the right acquired by the location of the mine."

The appellant relies upon Sweet v. Webber. 7 Colo. 443, 4 Pac. 752, and Original Co. of W. & K. v. Winthrop Min. Co., 60 Cal. 631. The first case goes no further than to hold that neither by a rule of miners nor by a state statute can a location be maintained upon the expenditure of less than $100 per annum, as required by the United States statutes,—a proposition that is not disputed and is not involved in this case. The second case holds that a local regulation providing for forfeiture of a claim upon the failure of the locator to perform some work upon it every 60 days was in conflict with the law of congress, and therefore void. The reasoning upon which this conclusion is reached is not stated in the opinion. It is opposed, not only to what we conceive to be the plain meaning of the statute, but to the weight of authority. Certain decisions are also cited, such as Belk v. Meagher, 3 Mont. 65, which sustain the proposition that a mining claim may not be forfeited until the expiration of the period which congress has fixed for the performance of the annual assessment work, but they are all cases in which the law of the United States alone was involved. In none of them was there a question of rights under a state law or a miners' regulation, and in none of them was the question which is now before the court even remotely involved. Their inapplicability to the present discussion is too apparent to require further comment. We find no error in the ruling of the circuit court, and the decree will be affirmed.

ROSS, Circuit Judge (dissenting). Prior to July 26, 1866, there was no congressional legislation authorizing the location or purchase of any of the mineral lands of the United States. Up to that time the location, working, and holding of mining claims upon the public lands was governed exclusively by the local rules and regulations of the respective mining districts, and such state legislation as was enacted with respect thereto by the states in which the lands were located. Jennison v. Kirk. 98 U. S. 453, 457. On the 26th of July, 1866, congress passed an act entitled "An act granting the right of way to ditch and canal owners through the public lands, and for other purposes," the first section of which declares:

"That the mineral lands of the public domain, both surveyed and unsurveyed, are hereby declared to be free and open to exploration and occupation by all citizens of the United States and those who have declared their intention to

become citizens, subject to such regulations as may be prescribed by law, and subject also to the local customs or rules of miners in the several mining districts, so far as the same may not be in conflict with the laws of the United States." 14 Stat. 253.

That act was followed by that of May 10, 1872 (17· Stat. 91), the fifth section of which enacted, among other things:

"That the miners of each mining district may make rules and regulations not in conflict with the laws of the United States, or with the laws of the state or territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, subject to the following requirements: The location must be distinctly marked on the ground so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location, and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim. On each claim located after the passage of this act, and until a patent shall have been issued therefor, not less than one hundred dollars' worth of labor shall be performed or improvements made during each year. On all claims located prior to the passage of this act, ten dollars' worth of labor shall be performed or improvements made each year for each one hundred feet in length along the vein until a patent shall have been issued therefor; but where such claims are held in common, such expenditure may be made upon any one claim; and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made; provided, that the original locators, their heirs, assigns, or legal representatives, have not resumed work upon the claim after such failure and before such location."

By an amendment of the latter act made on the 22d day of January, 1880, it was declared:

"That the period within which the work required to be done annually on all unpatented mineral claims shall commence on the 1st day of January succeeding the date of location of such claim." 21 Stat. 61.

It will be thus seen that under the act of May 10, 1872, the time within which the annual work or improvements to the amount of $100 in value was required to be performed or made ran from the date of the location of the claim, which period of commencement was by the act of January 22, 1880, changed to the 1st day of January succeeding the date of location. The purpose of that change was to establish a uniform period for the commencement of such work or the making of such improvements, and was made to correspond with the calendar year. 2 Lindl. Mines, § 626; Barringer & A. Mines & M. p. 263; McGinnis v. Egbert, 8 Colo. 41, 5 Pac. 652. The exemption of claims from the performance of labor for a portion of a year in some cases was a necessary result of the amendment of January 22, 1880. McGinnis v. Egbert, supra; Hall v. Hale, 8 Colo. 351, 8 Pac. 580; 2 Lindl. Mines, § 623; Waite, Am. Min. Law, § 29; Sickles, Min. Dec. p. 393. It has been held that the annual expenditure thus required by the act of congress must be made during the calendar year, and, unless so made, cannot be counted, even if the full amount of work be performed between the date of the location of the mining claim and the beginning of the calendar year succeeding it. Copp, Min. Lands (1880) 295. The reason of this is that congress saw proper to prescribe a uniform

time for the performance of the annual assessment work, to the extent of $100 in value, as a condition to the keeping alive of the rights of the locator; and as the property belongs to the government, and is subject to the exclusive control and disposition of congress, its provisions upon the subject are binding and controlling. That all local rules and regulations of any mining district, and all state legislation, in respect to the disposition of the minerals in or upon any of the public lands of the United States, in any way conflicting or inconsistent with the congressional legislation, is invalid, is manifest, not only from the foregoing consideration, but because the statute itself, in effect, so declares, and the authorities so hold. It is safe to say that not one decision can be found to the contrary. Jennison v. Kirk, 98 U. S. 457; Barringer & A. Mines & M. pp. 267, 282; 1 Lindl. Mines, §§ 310, 626; Eberle v. Carmichael (N. M.) 42 Pac. 98; Du Prat v. James, 65 Cal. 555, 557, 4 Pac. 562.

In the case at bar the bill shows that the complainant on the 9th day of January, 1897, discovered a vein of mineral-bearing quartz in place, situate in Mojave mining district, in Kern county, Cal., and that after making such discovery he on the same day located, claimed, and took possession of 1,500 feet in length along said mineral vein of rock in place by 500 feet in width, being 250 feet on each side of the middle of the vein, and did mark the boundaries, erect monuments, and post and record a notice of the location, as required by the laws and by the local rules and regulations of the district, and continued in possession of the claim so located until the 10th day of April, 1897, at which time, it is alleged, the defendants, with knowledge of the complainant's rights, but disregarding them, entered upon the premises and dispossessed the complainant; basing their action upon the ground that the complainant had forfeited his rights to the premises by failing to comply with the requirements of a rule of the mining district within which the claim is situated, which declares that:

"Within ninety days of location a shaft shall be sunk or a tunnel run to a depth of not less than ten (10) feet from the apex of the ledge of mineral-bearing quartz; otherwise, the claim shall be subject to relocation."

The validity of this local rule is the sole question in the case. It is conceded in the opinion of the majority of this court that a similar rule was held invalid by the supreme court of California in the case of Original Co. of W. & K. v. Winthrop Min. Co., 60 Cal. 631; but the prevailing opinion disapproves that decision, and declares it to be not only contrary to "the plain meaning of the statute [of the United States], but to the weight of authority." In my judgment, the exact reverse is true. The decision of the supreme court of California thus criticised and disapproved gives force and effect to the federal statute, and holds invalid a local rule of a mining district inconsistent therewith. This is not only in accord with the express language of the United States statute itself, and with the text writers, but with every decision of the courts that has come under my observation. Not a single decision cited and relied upon in the prevailing opinion, in my judgment, at all supports the conclusion therein announced; and with the ex-

ception of some dicta taken from the latter portion of the opinion of the supreme court of Nevada in the case of Sissons v. Sommers, 55 Pac. 829, there is nothing in the language of any of them that gives any support to the conclusion reached by the majority of this court. The federal statute, as has been shown, fixes the 1st day of January succeeding the date of the location as the commencement of the year within which the required work shall be done. The location here in question having been made on the 9th day of January, 1897, the time thus fixed by the legislation of congress within which the locator was required to perform at least $100 worth of work or make $100 worth of improvements commenced on the 1st day of January, 1898, and extended for the period of one year. Yet the local rule of the mining district in question declares forfeited the rights of the locator unless within 90 days after making his location a shaft be sunk or a tunnel run to a depth of not less than 10 feet from the apex of the ledge of mineral-bearing quartz; and this forfeiture the defendants to the present suit asserted, and it is now sustained by this court. Thus, by a local rule of the mining district, the locator's rights to the claim that he located in all respects in accordance with the law is declared forfeited before the commencement of the period fixed by the act of congress within which the annual assessment work is required to be done. It is difficult to see how there could be any greater inconsistency between two rules than is here shown. That there can be no forfeiture of a locator's rights to a claim properly located until the expiration of the full time allowed by the United States statute for the doing of the annual work or the making of the annual improvements has been many times decided. Belk v. Meagher, 3 Mont. 65, affirmed in 104 U. S. 279; Original Co. of W. & K. v. Winthrop Min. Co., 60 Cal. 631; Mills v. Fletcher, 100 Cal. 142, 34 Pac. 637; McGinnis v. Egbert, 8 Colo. 41, 5 Pac. 652; Hall v. Hale, 8 Colo. 351, 8 Pac. 580; Atkins v. Hendree, 1 Idaho, 95; Mining Co. v. Perasich, 7 Sawy. 217, 7 Fed. 331; Barringer & A. Mines & M. pp. 264, 267, 282; 2 Lindl. Mines, p. 777, § 624. Yet the majority of this court holds that this can be done by a local rule of the mining district within which the claim is situated. Nothing can be plainer, in my opinion, than that the time fixed by congress for the performance of the work and improvements it requires cannot be taken away, shortened, or in any way modified by any state legislation, or by any local rule or regulation of a mining district. To the extent that congress legislates on the subject, its act is binding and controlling. The acts of congress, however, in express terms authorize state legislation and the making of local rules and regulations by the various mining districts not inconsistent with its own act. For example, congress not having declared what should constitute a "discovery" of a mineral-bearing vein or lode, or the character or extent of the work necessary to be done to disclose such vein or lode in place, it is entirely competent for the states to legislate upon that subject, and for the various mining districts to make rules and regulations in respect thereto not inconsistent with federal or state law. Many

of them have done so; and as pointed out in 1 Lindl. Mines, p. 447 et seq., these state acts have almost always, if not universally, been sustained, because not inconsistent with any of the provisions of the acts of congress on the subject. In Wight v. Tabor, 2 Land Dec. Dep. Int. 738, 742, 743, however, Secretary Teller expressed a doubt whether a state legislature has the right to attach this condition to the appropriation of mineral lands. The first state act of that character was that of Colorado. Mills' Ann. St. 3152, 3154, 3155. In all vein and lode locations, discovery of mineral-bearing rock in place is the source of title. Without it there can be no valid location. Book v. Mining Co. (C. C.) 58 Fed. 106, 120. In 1 Lindl. Mines, § 343, will be found a synopsis of the legislation of Colorado, Arizona, Idaho, Montana, New Mexico, Wyoming, and North and South Dakota, requiring certain development work as a prerequisite to the completion of a valid location. The state of Nevada has since passed a similar act, which was the subject of consideration by the supreme court of Nevada in Sissons v. Sommers, 55 Pac. 829. The object of such legislation, says Mr. Lindley (section 344), is twofold:

"(1) To demonstrate to a reasonable degree of certainty that the deposit sought to be located as a lode is in fact a vein of quartz or other rock in place; (2) to compel the discoverer to manifest his intention to claim the ground in good faith under the mining laws."

The discovery shaft and the various equivalents provided for by the several state enactments constitute a part of the process of location (Morr. Min. Rights [8th Ed.] p. 27; 1 Lindl. Mines, supra), and, being consistent with the acts of congress, are valid, for the reason already stated. It was such an act that was the subject of consideration in Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. 560. In the other case cited in the prevailing opinion from the supreme court of the United States,—that of Mining Co. v. Kerr, 130 U. S. 256, 9 Sup. Ct. 511,—the local mining rule under which the location was made, and about which the court was speaking in the quotation made, was adopted prior to any congressional legislation upon the subject.

In California there is no statute, nor was there any rule or regulation of the Mojave mining district, requiring any development work prior to, and as a condition of, a valid location. The bill in the present case shows that the complainant perfected his location. The annual work necessary to maintain and hold that location is an altogether different thing. This distinction is recognized and clearly pointed out by Mr. Lindley in sections 623 and 626, and the failure to observe it constitutes, in my judgment, the error in the opinion and judgment from which I dissent. The performance of this annual assessment work is called by the miners a "representation" of the mine, and, when performed for a given period, the mine is said to be "represented." Belk v. Meagher, 3 Mont. 65, 77; 2 Lindl. Mines, p. 775; Barringer & A. Mines & M., supra. Congress having legislated in respect to that annual assessment work, its provisions are paramount, and any and every thing that conflicts with them is void, be it a rule or regulation

of a mining district or a statute of a state. For the reasons here given, I respectfully dissent from the opinion and judgment of the majority of the court.