MALONE et al. v. JACKSON.

(Circuit Court of Appeals, Ninth Circuit. May 8, 1905.)

1. MINES—RELOCATION—STATUTES.

Rev. St. U. S. § 2322 [U. S. Comp. St. 1901, p. 1425], provides that locators of mining claims shall have the exclusive right of possession of all the surface included within the lines of their location; and section 2324 [U. S. Comp. St. 1901, p. 1426] makes it a condition precedent that the locator shall perform labor or make improvements in a designated amount each year. Act Jan. 22, 1880, c. 9, 21 Stat. 61 [U. S. Comp. St. 1901, p. 1427], provides that a period within which work may be done annually on an unpatented claim located after May 10, 1872, shall commence on January 1st next succeeding the location. Held, that where a claim was located on December 6, 1898, it was not subject to relocation for the locator's failure to do the required work until after December 31, 1899.

2. SAME—ACTUAL POSSESSION—OUSTER.

Where plaintiff entered a mining claim when it was subject to relocation, and did certain work thereon; but, after it became subject to location, defendants made a peaceable adverse entry, plaintiff was not entitled to maintain ejectment based on his prior possession, on the ground that defendants were mere trespassers.

3. SAME.

Plaintiff located the mining claim in controversy on January 1, 1899, which had been previously located in December, 1898. Plaintiff remained in actual possession from 1900 to 1902, but made no relocation of the claim after January 1, 1900, when the original locator's rights expired for failure to do required assessment work, and on January 1, 1902, defendant entered peaceably and relocated the claim. Held, that defendant's relocation gave him the exclusive right of possession for one year from the date of his location.

In Error to the District Court of the United States for the Second Division of the District of Alaska.

The defendant in error, Jean S. Jackson, brought an action in ejectment on September 13, 1902, against William Malone, Julius Kidderlene, Charles Evans, Thomas Nye, and George Modina, in the United States District Court for the Second Division of the District of Alaska, to recover the possession of a mining claim known as "No. 17 Above Discovery on Osborne Creek," in the District of Alaska. It is alleged in the complaint that on the 9th day of July, 1899, plaintiff made a valuable discovery of gold within the limits of the placer mining claim afterwards known and described as "Placer Mining Claim No. 17 Above Discovery on Osborne Creek," and situated in the Cape Nome mining district of Alaska; that the premises contained within the exterior limits of the said placer mining claim were then free and open, unappropriated, and unexplored mineral lands of the United States, and subject to location and appropriation; that thereafter, on the 10th day of July, 1899, plaintiff marked the location of said placer mining claim upon the ground, so that the boundaries could be readily traced, and posted a notice thereon, signed by the plaintiff, containing the name of the locator, the day of the location, and such description of the claim with reference to natural objects and permanent monuments as would and did identify the same; that on the 12th day of July, 1899, plaintiff filed for record in the office of the recorder of the Cape Nome mining district a notice of such location, and thereafter at sundry times prior to the 25th day of August, 1902, the plaintiff made valuable discoveries of placer gold in the gravel beds contained within the limits of said placer claim; that plaintiff was at all times subsequent to the location thereof the owner in fee of said placer mining claim, and entitled to the possession thereof; that on the 25th day of August, 1902, the defendants entered upon said mining claim and ousted and ejected plaintiff therefrom, and ever since said date have held the possession of said mining claim from the plaintiff; that, by reason of the withholding of the possession of said mining claim from the plaintiff by the defendants, the plaintiff has been damaged in the sum of $3,000.

The defendants answered, denying the allegations of the said complaint, and setting up two defenses: First, that on the 6th day of December, 1898, one Frank Osborne, who was then a citizen of the United States, entered upon the ground described in the complaint, discovered therein placer gold, and located the claim in the name and for the benefit of one H. M. Baker, who was a citizen of the United States; that he marked the location upon the ground so that its boundaries could be readily traced, by posting notices upon the claim; that he filed a similar notice in the office of the recorder of the district, and the same was duly recorded; that on the 1st day of January, 1902, the defendant William Malone entered upon the ground described in the complaint, which was vacant, unappropriated, and unoccupied mineral land belonging to the government of the United States; that the defendant Malone discovered placer gold in said ground; that he staked and located the same as a placer mining claim in his own name, and for his own use and benefit; that he marked the location upon the ground by stakes, and by posting a notice thereon containing the name of the locator, the date of location, and such description of the claim with reference to natural objects and permanent monuments as would and did identify the same; and that he filed a similar notice with the recorder of the district, and the same was recorded.

The reply of the plaintiff denies that on the 1st day of January, 1902, the land and premises described in plaintiff's complaint, and designated as "No. 17 Above Discovery on Osborne Creek," was vacant or unappropriated or unoccupied public lands belonging to the government of the United States.

The case was tried before a jury, and, upon the conclusion of the evidence, counsel for the plaintiff moved the court to instruct the jury to return a verdict for the plaintiff, for the reason that the defense set up by the defendants did not constitute a defense to the cause of action set up in the complaint. The court granted plaintiff's motion, and the jury, being so instructed, returned a verdict accordingly. The action of the court in instructing the jury to return a verdict for the plaintiff is assigned as error.

J. C. Campbell, W. H. Metson, and Ira D. Orton' (Thomas H. Breeze, of counsel), for plaintiffs in error.

John L. McGinn, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts). The defendant in error objects that the assignments of error do not comply with rule 11 of this court, requiring that assignments of error "shall set up separately and particularly each error asserted and intended to be urged." The purpose of this rule and of rule 24 is to secure a clear, but brief, statement of the precise question to be reviewed, and enable the court to understand the subject of the controversy without laborious search. If this appears clearly and distinctly in the record as pointed out by the assignments of error, it is all that is required. In this case there is no difficulty in understanding the question as presented by the record, and further particularity in the assignments of error is therefore unnecessary.

Plaintiff's action is in the nature of a suit in ejectment against the defendants to recover the possession of a mining claim. His right of action is based upon an alleged possession under claim of ownership, supported by a location made in accordance with the procedure prescribed by the laws of the United States.

The first defense set up by the defendants is a prior location made for and on behalf of one H. M. Baker on December 6, 1898. The defendants do not connect themselves with any right or title under this location, but it is set up for the purpose of establishing the fact that the ground was not free and open, unappropriated and unexplored, mining land of the United States, subject to appropriation and location, when the plaintiff made his location, on July 10, 1899. It is provided in section 2322 [U. S. Comp. St. 1901, p. 1425] of the Revised Statutes that locators of mining claims shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations. Section 2324 [U. S. Comp. St. 1901, p. 1426] provides, as a condition upon which a mining claim may be held, that the locator shall perform labor or make improvements in a designated amount each year. The act of January 22, 1880, c. 9, 21 Stat. 61 [U. S. Comp. St. 1901, p. 1427], provides that the period within which the work to be done annually on unpatented claims located since May 10, 1872, shall commence on the 1st day of January next succeeding the date of the location of the claim. Under this act the period for the annual work required to protect the Baker location commenced January 1, 1899, and continued during the entire year expiring on December 31, 1899. The claim was therefore not open to relocation when plaintiff made his location, on July 10, 1899. The law upon this subject was declared by the Supreme Court, in Belk v. Meagher, 104 U. S. 279, 284, 26 L. Ed. 735, as follows:

"Mining claims are not open to relocation until the rights of a former locator have come to an end. A relocator seeks to avail himself of mineral in the public lands which another has discovered. This he cannot do until the discoverer has, in law, abandoned his claim, and left the property open for

another to take up. The right of location upon the mineral lands of the United States is a privilege granted by Congress, but it can only be exercised within the limits prescribed by the grant. A location can only be made where the law allows it to be done. Any attempt to go beyond that will be of no avail. Hence a relocation on lands actually covered at the time by another valid and subsisting location is void, and this not only against the prior locator, but all the world, because the law allows no such thing to be done."

But plaintiff contends that he is entitled to recover on the strength of his prior actual possession of the premises under claim of ownership as against defendants, who, it is said, are mere trespassers on the land, or, at most, claiming possession under a later location. This claim has also been determined adversely by the Supreme Court in the case just cited. In that case, as in this, the defendant was a subsequent locator, but entered into possession of the premises peaceably and without force. As against this possession, the plaintiff, in Belk v. Meagher, claimed the right to recover. But the court said:

"Under the provisions of the Revised Statutes relied on, Belk could not get a patent for the claim he attempted to locate unless he secured what is here made the equivalent of a valid location by actually holding and working for the requisite time. If he actually held possession and worked the claim long enough, and kept all others out, his right to a patent would be complete. He had no grant of any right of possession. His ultimate right to a patent depended entirely on his keeping himself in, and all others out; and, if he was not actually in, he was, in law, out. A peaceable adverse entry, coupled with the right to hold the possession which was thereby acquired, operated as an ouster, which broke the continuity of his holding, and deprived him of the title he might have got if he had kept in for the requisite length of time. He had made no such location as prevented the lands from being, in law, vacant. Others had the right to enter for the purpose of taking them up, if it could be done peaceably and without force. * * * No one contends that the defendants effected their entry and secured their relocation by force. They knew what Belk had done, and what he was doing. He had no right to the possession, and was only on the land at intervals. There was no inclosure, and he had made no improvements. He apparently exercised no other acts of ownership after January 1st than every explorer of the mineral lands of the United States does when he goes on them and uses his pick to search for and examine lodes and veins. As his attempted relocation was invalid, his rights were no more than those of a simple explorer. In two months he had done, as he himself says, 'no hard work on the claim,' and he 'probably put two days' work on the ground.' This was the extent of his possession. He was not an original discoverer, but he sought to avail himself of what others had found. His possession might have been such as would have enabled him to bring an action of trespass against one who entered without any color of right, but it was not enough, as we think, to prevent an entry peaceably and in good faith for the purpose of securing a right under the act of Congress to the exclusive possession and enjoyment of the property. The defendants, having got into possession and perfected a relocation, have secured the better right. When this suit was begun they had not only possession, but a right granted by the United States to continue their possession against all adverse claimants. The possession by Belk was that of a mere intruder, while that of the defendants was accompanied by color of title."

The defendant in error contends, however, that the location made by Baker in 1898 was as effectual to preclude Malone from making a location in 1902 as it was Jackson in 1899, for the reason that the evidence does not show that the Baker location was ever terminated, either by forfeiture or abandonment. The Baker location was suffi-

cient to give to the locator an exclusive right to the possession and enjoyment of the property until January 1, 1900. The location of Jackson on July 10, 1899, was therefore void, and gave him no right of possession. But Jackson appears to have been in the actual possession of the claim in the years 1900, 1901, and 1902. He testified that he was on the claim in 1900; that he had two men on it for two weeks—one person besides himself. In the year 1901 he ran a 40-foot drain and two little cuts into the side. The value of the work done, he says, was $200. He found deposits of gold on the claim in the year 1901... He worked on the claim in August of the year 1902. He had a tent on the property. This evidence was sufficient to show that Baker had abandoned the claim, and that it was open to relocation after January 1, 1900. But Jackson did not relocate the claim after that date. He was merely in possession as an explorer. He did not add to his possession the right of exclusive possession which he would have obtained by a valid relocation. This was done by Malone on January 1, 1902, and this relocation by Malone gave him the right of exclusive possession until January 1, 1903. Had Jackson relocated the claim on January 1, 1900, he would have added to his possession the exclusive right of possession; and, had he then made the expenditures and improvements required by the statute during the year 1901, the claim would not have been open to relocation on January 1, 1902, and Malone's relocation on that date would have been void. But as it was, Malone's relocation was valid, and his ouster of Jackson left the latter without the right of possession which it was necessary for him to have in order to maintain this suit. The court should therefore have instructed the jury to return a verdict for the defendant, instead of for the plaintiff.

The judgment of the court below is reversed, with instructions to grant a new trial.