## HANSON et al. v. CRAIG et al.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1908.)

### No. 1,456.

MINES AND MINERALS—ACTUAL POSSESSION OF MINING CLAIM—TEMPORARY SUSPENSION OF WORK.

Where a gold placer mining claim had been duly located, its boundaries marked so as to be readily traced, and the locators had commenced sinking a shaft which was subsequently completed to bed rock, resulting in the discovery of mineral therein, a temporary suspension of the work for a few days for the purpose of procuring tools and necessary supplies

for the prosecution of the work in good faith did not constitute a break in their actual possession which would entitle another to enter upon and relocate any portion thereof, even though at the time of such entry and ouster the locators had not actually made a discovery of mineral.

In Error to the District Court of the United States for the Third Division of the District of Alaska.

McGinn & Sullivan, J. C. Campbell, W. H. Metson, F. C. Drew, C. H. Oatman, and J. A. MacKenzie, for plaintiffs in error.

T. C. West, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This was an action in ejectment tried in the court below with a jury, resulting in a verdict and judgment for the plaintiffs in the action. The complaint alleged that while the plaintiffs, who are the defendants in error here, were the owners and in the actual possession of a placer mining claim situate on Wildcat creek, a tributary of Treasure creek, in the Fairbanks mining district of Alaska, called the "Red Dog Association claim," the plaintiffs in error, who were defendants to the action, went upon a part of the ground and ousted the plaintiffs therefrom. There was evidence tending to show that the plaintiff Carroll and one Hugh Dougherty, as attorney in fact for the plaintiff Alice Dougherty, located and staked the Red Dog Association claim for the plaintiffs on the 5th day of January, 1906, the ground so staked being 1,320 feet wide by a mile long, and the plaintiffs being eight in number; that on the 18th of the next month the plaintiffs changed the boundaries of the claim so as to lessen the width one-half and to double the length, and marked the boundaries thereof so that they could be readily traced upon the ground, and thereafter recorded the notice of location; that on the 12th of March, 1906, the plaintiffs made arrangements for working the claim and arranged for the plaintiff Cale to go to Fairbanks, which was about 18 miles distant, in order to procure tools, blankets, and necessary supplies, and to return to the claim and commence work thereon on the 16th of March, 1906, and that in the meantime the plaintiff Carroll and Hugh Dougherty, as the representative of the plaintiff Alice Dougherty, should begin the sinking of a shaft on the claim, which they did on the 14th of March, 1906, continuing such work during the 14th and 15th of that month, and sinking the hole to a depth of about six feet; that in the evening of March 15th Carroll and Dougherty left the claim for the reason that Cale was expected to return from Fairbanks under the arrangement, and proceed with the work thereon the next morning, and for the reason that until the shaft had been sunk a sufficient distance but one man could work therein.

It appeared from the testimony that Cale selected the place on the 12th of March for the sinking of the shaft; that witness testifying:

"I told Mr. Carroll and Mr. Dougherty on the evening of the 12th that they could go to work and commence sinking a shaft immediately, and that I would leave in the morning and go to Fairbanks creek, and that it would not take me to exceed three days to get back; that I would be back on the

third day if nothing intervened—nothing interfered with me—which they agreed to do. I had a similar conversation with them on the morning of the 13th when leaving. That was the understanding, that they would go up in the morning and commence work on this shaft on this ground; and I left on that morning."

It further appeared that Cale was delayed somewhat, and did not get back to the claim until the afternoon of the 21st of March, when he went to work in the shaft that had been commenced on the 14th of March by Carroll and Dougherty; Cale testifying:

"I immediately went to work and remained working until the shaft was sunk to bed rock. I worked alone for a while until I got the shaft down as far as I could get it and throw the dirt out. Then I went to work and timbered the shaft, and made a windlass and a few other things that were necessary to continue the work, and I then got Mr. Warren [being one of the plaintiffs] to help along in finishing the shaft, sinking it to bed rock [and that in sinking the shaft he made a discovery of gold]."

The case further shows that on the 16th day of March, and before Cale got back, the plaintiffs in error made a location of a claim called "Try Again Association claim," which location included a part of the ground covered by the Red Dog Association claim, and from that portion of the ground so included the defendants to the action ousted the plaintiffs, and themselves commenced development work thereon, which acts by the defendants caused the bringing of the action.

The court below left it to the jury to determine whether the defendants in error were in the actual possession of the ground in controversy, and actively engaged in the prosecution of development work upon it in a search for gold, at the time of the entry thereon by the plaintiffs in error, and the question of their ouster of the defendants in error, instructing the jury in effect that if they so found, and also found that the location under which the plaintiffs claimed was so marked upon the ground that its boundaries could be readily traced, and that a notice of such location was recorded within the statutory period of 90 days, in the office of the county recorder of the mining district within which the claim is situated, a verdict should be returned for the plaintiffs, even though at the time of the defendants' entry and ouster the plaintiffs had not actually made a discovery of mineral. In the same connection the court told the jury that if they found that the absence of the plaintiffs from the ground at the time of the defendants' entry thereon on the 16th of March was but temporary, and for the purpose of procuring tools, provisions, and other necessary supplies for the diligent and bona fide prosecution of their work, such temporary absence would not affect the plaintiffs' right in the premises. We are of opinion that these instructions were correct. The evidence certainly tended to show that when Carroll and Dougherty left the ground in the evening of March 15th, after working in the shaft that day and the day before, they expected Cale to proceed with the work the next morning, in accordance with an arrangement made with him to that effect, and that Cale's delay in returning was but temporary, with no thought on the part of either of the plaintiffs of abandoning the claim. The court was in our opinion right in instructing the jury that such a short and temporary absence of the plaintiffs from their

claim as the evidence tended to show, occasioned by the necessity of procuring tools, provisions, and other supplies for the proper prosecution of their work, would not constitute a break in the plaintiffs' actual possession; and that a locator of mining ground in the actual possession of it, and in the active prosecution of work thereon in good faith, is entitled to protection against an intruder into that possession, is well settled. The evidence to which objection is made by plaintiffs in error bore upon the good faith of the possession and work of the defendants in error, and was properly admitted.

We see no reversible error in the record; and accordingly the judgment is affirmed.