HANSON et al. v. CRAIG et al.

(Circuit Court of Appeals, Ninth Circuit.  May 3, 1909.)

No. 1,456.

MINES AND MINERALS (§ 27*)—LOCATION OF MINING CLAIMS—CONFLICTING LO-
    CATIONS.

    Under Rev. St. §§ 2320, 2322, 2329 (U. S. Comp. St. 1901, pp. 1424, 1425, 1432), possessory title to a mining claim can only be acquired by a valid location, an essential of which is the discovery of mineral thereon; and where the locators of two association claims, which overlap, are sinking shafts at the same time, the first to discover mineral has priority of right, although the location was staked after the other, if it was made openly and peaceably.

    [Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 27.*]

On Rehearing.

For former opinion, see 161 Fed. 861, 89 C. C. A. 55.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. Not being satisfied with our decision heretofore rendered in this case (161 Fed. 861, 89 C. C. A. 55), the petition for a rehearing of the cause was granted, and after a further consideration of the record we are convinced that the decision then made was erroneous. The theory upon which we then proceeded was that the evidence was sufficient to justify a finding of such a possession of the mining ground in question by the defendants in error, who were the plaintiffs below, as precluded the plaintiffs in error, who were defendants below, from entering upon it for the purpose of prospecting and making a valid mining location thereon. Some of the facts are stated in the opinion then delivered, but there are other facts shown by the record which were overlooked.

The plaintiffs in error, as well as the defendants in error, are eight in number, and made the location under which they respectively claim as an association claim of 160 acres of placer ground. The location of the defendants in error was prior in point of time, having been made on the 5th day of January, 1906; the ground then staked by them being 1,320 feet wide by a mile long, on Wildcat Creek, a tributary of Treasure Creek, in the Fairbanks mining district of Alaska. That claim was called the "Red Dog Association Claim." On the 18th of the next month the defendants in error changed the boundaries of the claim, so as to lessen the width one-half and to double the length, and marked the boundaries thereof so that they could be readily traced upon the ground, and thereafter recorded the notice of such location. The record shows that the defendants in error had various other association claims of 160 acres each in the near vicinity and had a camp not far away. The evidence tended to show that on the 12th of March, 1906, the defendants in error made arrangements to commence sinking a shaft upon the ground thus claimed in search of gold, and with that end in view it was arranged that the defendant in error Cale should go to Fairbanks, which was about 18 miles distant, to procure the necessary tools, blankets, and other supplies, and to return to the claim and commence work thereon on the 16th of March, 1906, and that in the meantime the defendant in error Carroll and one Hugh Dougherty as the representative of the defendant in error Alice Dougherty, should begin the sinking of a shaft on the claim, which they did on the 14th of March, 1906, continuing such work during the 14th and a part of the 15th of that month, during which time they sunk the hole to a depth of about six feet. It appears that in the evening of March 15th Carroll and Dougherty left the claim, taking with them their tools and other belongings, for the reason that Cale was expected to return from Fairbanks, under the arrangement, and proceed with the work thereon the next morning, and also assigned as a reason that until the shaft had been sunk a sufficient distance but one man could work therein. It appears from the testimony that

Cale selected the place on the 12th of March for the sinking of this shaft; that witness testifying:

"I told Mr. Carroll and Mr. Dougherty on the evening of the 12th that they could go to work and commence sinking a shaft immediately, and that I would leave in the morning and go to Fairbanks Creek, and that it would not take me to exceed three days. to get back; that I would be back on the third day if nothing intervened—nothing interfered with me—which they agreed to do. I had a similar conversation with them on the morning of the 13th, when leaving. That was the understanding, that they would go up in the morning and commence work on this shaft on this ground; and I left on that morning."

There was also testimony going to show that Cale returned to within one mile of the Red Dog association claim on the 18th of March, with his tools and supplies, but, instead of going onto the ground and commencing work, stopped at the camp of the defendant in error Carroll, and from there went back to Fairbanks Creek, and did not return to the ground in dispute until the afternoon of the 21st of March, when he went to work in the shaft or hole that had been commenced on the 14th of the month by Carroll and Dougherty; Cale testifying:

"I immediately went to work, and remained working until the shaft was sunk to bedrock. I worked alone for a while, until I got the shaft down as far as I could get it and throw the dirt out. Then I went to work and timbered the shaft, and made a windlass and a few other things that were necessary to continue the work, and I then got Mr. Warren [being one of the defendants in error] to help along in finishing the shaft, sinking it to bed rock [and that in sinking the shaft he made a discovery of gold]."

This discovery of gold, however, was subsequent to the location which was made by the plaintiffs in error on the 16th day of March, 1906, of a claim called "Try Again Association Claim," which location included a part of the ground covered by the Red Dog association claim. The plaintiffs in error so marked the boundaries of the Try Again association claim as that they could be readily traced upon the ground, and commenced sinking a shaft upon that portion of it which overlapped the Red Dog association claim of the defendants in error, and continuously prosecuted their work until they made a discovery of gold thereon on the 15th day of April, 1906, up to which time the defendants in error had not made any discovery of mineral within the boundaries of the Red Dog association claim.

Since the statute of the United States requires, as one of the essential conditions to the making of a valid location of unappropriated public land of the United States under the mining laws, a discovery of mineral within the limits of the claim (Rev. St. §§ 2320, 2329 [U. S. Comp. St. 1901, pp. 1424, 1432]), the real question for decision in this case is whether the defendants in error had such possession of the Red Dog association claim as precluded the plaintiffs in error from entering upon the ground and making their location of March 16, 1906, under which they proceeded to make a discovery of gold within the boundaries marked out by them, prior to any discovery by the defendants in error. The exclusive right of possession is by section 2322 of the Revised Statutes (U. S. Comp. St. 1901, p. 1425) conferred only on one who has made a valid location, one of the es-

sentials of which is, as has been said, a discovery of mineral. Prior to that time all such mineral land is in law vacant and open to exploration and location, subject to the well-established rule that no prospector is authorized by any form of forcible, fraudulent, surreptitious, or clandestine conduct to enter or intrude upon the actual possession of another prospector; for every miner upon the public domain is entitled to hold the place in which he may be working against all others having no better right. Zollars v. Evans (C. C.) 5 Fed. 172. The matter is, we think, well and tersely put by Costigan on Mining Law, p. 156, where he says:

"'Pedis possessio' means actual possession, and pending a discovery by anybody the actual possession of the prior arrival will be protected to the extent needed to give him room for work and to prevent probable breaches of the peace. But, while the pedis possessio is thus protected, it must yield to an actual location on a valid discovery made by one who has located peaceably, and neither clandestinely nor with fraudulent purposes."

These views are, we think, well sustained by numerous decisions of the Supreme Court, of this court, and various other courts, some of which we cite. Del Monte Mining & Milling Company v. Last Chance Mining & Milling Company, 171 U. S. 55, 18 Sup. Ct. 895, 43 L. Ed. 72; Jennison v. Kirk, 98 U. S. 453, 25 L. Ed. 240; Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735; King v. Amy & Silversmith M. Co., 152 U. S. 222, 14 Sup. Ct. 510, 38 L. Ed. 419; Creede v. Uintah M. Co., 196 U. S. 337, 25 Sup. Ct. 266, 49 L. Ed. 501; Cook v. Klonos (C. C. A.) 164 Fed. 529; Johanson v. White, 160 Fed. 901, 88 C. C. A. 83; Malone v. Jackson, 137 Fed. 878, 70 C. C. A. 216; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673; Olive Land & Development Co. v. Olmsted (C. C.) 103 Fed. 568; Gemmel v. Swain, 28 Mont. 331, 72 Pac. 662, 98 Am. St. Rep. 570; Du Prat v. James, 65 Cal. 555, 4 Pac. 562; Horswell v. Ruiz, 67 Cal. 111, 7 Pac. 197. Applying the foregoing decisions to the present case, it is impossible to hold upon the record here that the defendants in error had such a possession of the strip of public land 660 feet wide and 2 miles long as precluded any other good-faith prospector from peaceably going within those boundaries and himself making a discovery and location.

It is pertinent to add that the Land Department of the government has recently decided that it would not recognize any such shoestring location as conforming to the provisions of the United States statutes upon the subject. See Snow Flake Fraction Placer, 37 Land Dec. Dep. Int. 250 (decided November, 1908), where it was said:

"It is the policy of the government to have entries, whether they be of agricultural or mineral lands, in compact form. Congress has repeatedly announced this principle, and the department has always and does now insist upon it. The public domain must not be cut into long and narrow strips. No 'shoestring' claims should ever receive the sanction of this department."

It results that the judgment must be, and hereby is, reversed, and the cause remanded to the court below.