ROONEY et al. v. BARNETTE et al.

(Circuit Court of Appeals, Ninth Circuit. October 7, 1912.)

No. 2,005.

1. Jury (§ 47*)—Qualification of Jurors—Residence.

A juror, in Alaska, who testified that he had been a resident of the territory for five years, and was employed at an annual salary as purser on boats which navigated the Yukon river during the summer season, was not subject to challenge for cause merely because it was customary for him to leave the territory during the winters.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 254; Dec. Dig. § 47.*]

2. Mines and Minerals (§ 23*)—Association Claims—Assessment Work.

The law does not require assessment work to be done on each 20 acres of an association placer mining claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 51–59, 114; Dec. Dig. § 23.*]

3. Mines and Minerals (§ 26*)—Mining Claims—Location on Subsisting Claim.

An entry upon a mining claim before a prior locator is in default cannot be made for the purpose of making a provisional location, to be valid in case the prior locator fails to do the annual work.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 61–63; Dec. Dig. § 26.*]

4. Judgment (§ 707*)—Res Judicata—Suit Between Different Parties.

A decree in a suit to quiet title to an association mining claim, finding that the location was invalid, based on evidence tending to show an agreement prior to the location that one person should own an interest in excess of 20 acres, is not conclusive as an adjudication in a subsequent action of ejectment brought by a stranger to such suit against the complainants therein and others; but the question of the validity of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

location is an open one in such action, to be determined by the jury on the evidence therein.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1230; Dec. Dig. § 707.*]

5. MINES AND MINERALS (§ 25*)—ASSOCIATION CLAIMS—VALIDITY.

An association mining location is not invalidated by an agreement, made after the location and discovery of mineral, giving one person an interest in excess of 20 acres.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 60; Dec. Dig. § 25.*]

6. MINES AND MINERALS (§ 17*)—MINING CLAIMS—DISCOVERY.

A discovery of gold on a placer mining claim by one holding an option to purchase the claim, but before he has exercised such option, and while the right of possession remains in the locator, inures to the benefit of his location.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 24–28; Dec. Dig. § 17.*]

7. MINES AND MINERALS (§ 34*)—MINING CLAIMS—RIGHT TO CONVEY BEFORE DISCOVERY.

The location of mineral ground gives to the locator before discovery, and while he complies with the statutes of the United States and the state and local rules and regulations, the valuable right of possession against all intruders, and this right he can convey to another.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 81–86; Dec. Dig. § 34.*]

8. MINES AND MINERALS (§ 38*)—VALIDITY OF LOCATION—QUESTIONS FOR JURY.

The question whether location of a mining claim was bona fide or merely speculative is one for the jury, when in issue in an action of ejectment.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska.

Action by William Rooney and others against E. T. Barnette, J. C. Ridenour, Henry Cook, John L. McGinn, N. L. Sullivan, Alwell & Riley, a mining copartnership composed of C. B. Alwell and J. E. Riley, Enstrom Bros., a mining copartnership composed of L. Enstrom and O. Enstrom, and August Peterson. Judgment for defendants, and plaintiffs bring error. Affirmed.

The case was tried before the court and jury, and resulted in a verdict and judgment for defendants. From this judgment plaintiffs prosecute this writ of error, basing the same upon the refusal of the court below to allow a challenge to a juror for cause, and upon alleged erroneous instructions of the court below, and its refusal to give certain instructions requested by plaintiffs.

Louis K. Pratt, of Fairbanks, Alaska, and Robert W. Jennings, of Baltimore, Md., for plaintiffs in error.

Metson, Drew & Mackenzie, of San Francisco, Cal. (E. H. Ryan, of San Francisco, Cal., of counsel), for defendants in error McGinn, Sullivan, Ridenour, and Cook.

T. C. West, of San Francisco, Cal., for defendant in error Barnette.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The parties will be designated as in the court below.

[1] It is assigned as error that in the impanelment of the jury in the court below a challenge for cause interposed by plaintiffs to Juror John Derby was denied. The objection to the juror was that he was not an inhabitant of the district of Alaska, as required by section 170, c. 16, of the "Act making further provision for a civil government for Alaska and for other purposes," approved June 6, 1900 (31 Stat. 321, 358, c. 786), and section 11, c. 4, of the "Act to define and punish criminals in the district of Alaska and to provide a Code of Criminal Procedure for said district," approved March 3, 1899 (30 Stat. 1253, 1286, c. 429). Derby testified that he was an inhabitant of district of Alaska; that he had resided in Alaska for the past five years; that his business was that of a purser on boats running on the Yukon river. He was employed at an annual salary, but the boats were only engaged in the business for six or seven months during the summer. During the remainder of the year the business was shut down on account of the ice. He was in Alaska during the winter of 1905 and 1906. He voted in Alaska during that winter, and he had voted nowhere else since that time. He was absent from the district during the winter of 1906 and 1907 and the year 1908. His employment did not require him to remain in Alaska during the winter, but he was then, at the time of the trial, remaining in the district for the winter of 1909–10. Considering the climatic conditions in Alaska, and the fact that those whose employment or business do not require them to remain in Alaska during the winter usually come away, there was nothing in the fact of Derby's absence from the district at the times mentioned to contradict his testimony that he was an inhabitant of the district.

The plaintiffs' challenge of Derby for cause having been denied, he was challenged by plaintiffs peremptorily, and thereafter, the plaintiffs having exhausted all their peremptory challenges, they were compelled to accept one O. H. Bernard as a juror, against whom plaintiffs state they would have interposed a peremptory challenge, had it not been that this right had been exhausted on Derby. Bernard was not challenged for cause, and his examination on the voir dire developed no facts which would have justified a challenge for cause. The facts stated by Bernard, which plaintiffs think would have justified them in exercising a peremptory challenge were these: Bernard had never had a case before the court, but had some trouble over some property, and settled it through a compromise. Some parties, he presumed, had jumped some of their ground. He was acquainted with the defendant Barnette; slightly acquainted with defendants Ridenour, Sullivan, and McGinn; was not acquainted with defendant Cook; was an association claim locator; McGinn, one of the defendants' attorneys, had been Bernard's attorney in a matter; it did not result in much; was not his attorney then. These facts may have been sufficient to justify the plaintiffs in exercising a peremptory chal-

lenge against the juror, and if he had that right no one could object; but in contending for the right we do not see that plaintiffs have raised even a suspicion that they might have been in any way prejudiced by the ruling of the court. There is nothing in the examination tending in the least to show that Bernard could not be a fair and impartial juror in the case, and there is nothing to show or tending to show that the court, in denying plaintiffs' challenge of Derby for cause, exercised its discretion arbitrarily. The finding of the trial court upon such an issue ought not to be set aside by a reviewing court, unless the error is manifest, and where the law left nothing to the conscience or discretion of the court. Reynolds v. United States, 98 U. S. 145, 156, 25 L. Ed. 244.

The remaining assignments of error relied upon by the plaintiffs may all be considered under the objections to instructions given by the court to the jury and instructions requested by the plaintiffs and refused by the court.

The claim in controversy is designated as placer mining claim No. 3 below Discovery on the first tier, right limit of Dome creek, Alaska. The plaintiffs' right of possession is derived from a location of a claim of 20 acres described as above, made on the 21st day of September, 1905, by the plaintiff William Rooney, and filed for record on October 13, 1905, and a discovery of gold on the bed rock of the claim made about December 25, 1905. Thereafter the right of possession acquired by Rooney by his location and discovery became vested in the plaintiffs, William Rooney, John Junkin, G. W. Johnson, and August Plaschlart.

The defendants' right of possession is claimed under two separate and distinct placer mining locations. The first location is designated as the Dome Group Association claim on the right limit of Dome creek in the Fairbanks district of Alaska. This location included a tract of 160 acres, the equivalent of eight claims of 20 acres each. The location was made by Henry Cook and J. C. Ridenour for themselves, and at the instance of one Barnette the location included the names of A. T. Armstrong, W. H. Sumner, G. L. Newton, M. E. Armstrong, L. T. Selkirk, and A. R. Armstrong, who were not residents of the district, but of the state of Ohio. The location was made on the 23d and 24th of March, 1905, and was distinctly marked on the ground by stakes, so that its boundaries could be readily traced. A discovery of gold was made on the claim by Cook and Ridenour on the 15th day of April, 1905, and the notice of location filed for record on April 17, 1905. The Associated claim included the ground in controversy.

The plaintiffs requested the trial court to withdraw the Dome Group Association claim from the consideration of the jury as a defense to the action on the ground that the invalidity of the claim had been established. The court's refusal to withdraw this defense is assigned as error. The controversy as to this location arises mainly upon this state of facts:

In April, 1905, Henry Cook, J. C. Ridenour, A. T. Armstrong, W. H. Sumner, Y. L. Newton, L. T. Selkirk, and A. R. Armstrong, the

eight locators of the Dome Group Association claim, brought a suit in equity in the District Court of Alaska against John Klonos and a number of other defendants, including Richard Stafford, for a decree determining the adverse claims of the defendants in and to the ground claimed by the plaintiffs, and that it be adjudged that the defendants had no estate or interest whatsoever in and to said ground, that the cloud cast upon plaintiffs' title by defendants' claim of title be removed, and for other relief. The defendants answered the complaint, and upon the issues thus presented the case was brought to trial before the court. At the close of plaintiffs' testimony the defendants moved for a nonsuit, and for a judgment dismissing plaintiffs' bill substantially on the grounds: (1) That plaintiffs' location of eight claims constituting the alleged Dome Group of claims was not made by bona fide locators, but in the name of dummy locators, in violation of law; and (2) that the plaintiffs had not shown that prior to and at the time of the location of their claims the ground was vacant and unappropriated public lands of the United States. The motion was granted on the second ground.

On appeal to this court it was held (Cook v. Klonos, 164 Fed. 529, 90 C. C. A. 403) that the evidence was sufficient to show prima facie that at the time of the location of the claim by the plaintiffs it was unappropriated public land of the United States, although it further appeared that there were other stakes and location notice within the limits of the claim, but it was not shown that these stakes were set by or belonged to the defendants, or that any prior discovery had been made on the claim. This court accordingly refused to affirm the decree of the trial court upon the ground stated, but held that plaintiffs' location appeared to be a fraudulent device by which one E. T. Barnette, who was himself not a locator, used the names of A. T. Armstrong, W. H. Sumner, Y. L. Newton, M. E. Armstrong, L. T. Selkirk, and A. R. Armstrong as locators, under an agreement or understanding with them that he should have a half interest in their locations, or the equivalent of 60 acres in their location. Upon this ground this court affirmed the judgment of the court below. Subsequently, upon a petition for rehearing, in Cook v. Klonos, 168 Fed. 700, 94 C. C. A. 144, while expressing its satisfaction with what had been said in the opinion with respect to Barnette and the six absent locators, upon a further examination of the record the court was not satisfied that Cook and Ridenour were parties to the fraud. The court said:

"If they were not, and they joined in the location in question in good faith, and the ground was open to location, we think they are entitled to select 20 acres each within the exterior boundaries of the associated claim, provided they have continued to conform to the requirements of the statute and the local rules of the mining district."

The court accordingly modified its judgment so as to read:

"The judgment of the court below is affirmed as to appellants A. T. Armstrong, W. H. Sumner, Y. L. Newton. M. E. Armstrong, L. T. Selkirk, and A. R. Armstrong, and as to Henry Cook and J. C. Ridenour it is reversed, and the case remanded, with leave to them to file a supplemental bill, should they so elect, and in that event for further proceedings in accordance with the views here expressed."

It is further contended by the plaintiffs that, this court having held that the Dome Group Association claim was void as to six of the locators, it is void as to the entire location. What this court held was that upon the evidence before the court it appeared that Barnette had prior to the location entered into an agreement with his six absent locators for the purpose of making a location in their names whereby he would fraudulently secure for himself an interest in the location equivalent to 60 acres in the entire location, and that as this interest was in excess of 20 acres, the limit allowed by law for an individual location, and in excess of the limit provided by law for an individual share in an association claim, this share or interest was void, and the fraudulent scheme or device rendered void the interests of all those who were parties to the fraud. The law is that the unit of an individual placer location is limited to 20 acres, and not more than 160 acres may be embraced within one location by an association of persons, of which there must be at least eight. R. S. U. S. §§ 2330, 2331 (U. S. Comp. St. 1901, p. 1432). There may be a less number than eight; but, where that is the case, there must also be a less quantity of ground located, corresponding to the equivalent of a less number of individual locations. Where a location is made by an association of locators, we know of no reason why the fraudulent and concealed conduct of one of the locators in an association claim should invalidate the entire location, and it is obvious that there are many reasons why it should not, particularly when the location can be reduced without injury to innocent parties and the limit observed for the number of locators who have not participated in the fraud.

But it is further contended that in the modified opinion of this court in Cook v. Klonos, 168 Fed. 700, 94 C. C. A. 144, a way was pointed out by which the defendants Cook and Ridenour might select 20 acres each within the exterior boundaries of the associated claim, and by means of a supplemental bill enforce their right of possession to such locations against the defendants in that case; but, it is insisted, as they have not pursued that course, they cannot claim anything in this case under the Dome Group Association claim. It may be admitted that as against the defendants in that case it would be necessary for Cook and Ridenour to pursue the course pointed out by the court to establish their right to locations within the associated claim; but the plaintiffs in this case were not parties to that suit, and the defendants in this suit were not all plaintiffs in that suit, and the facts are not the same. The present action is a suit in ejectment. It is elementary law that a plaintiff in ejectment must recover upon the strength of his own title, which must be sufficiently established to warrant a verdict in his favor. A mere intruder and trespasser cannot make his wrongdoing successful by asserting a flaw in the title of the one against whom the wrong has been by him committed. Haws v. Victoria Copper Mining Co., 160 U. S. 303, 317, 16 Sup. Ct. 282, 40 L. Ed. 436; McIntosh v. Price, 121 Fed. 716, 718, 58 C. C. A. 136.

The suit of Cook v. Klonos was commenced in April, 1905, but it was not until September, 1905, that plaintiffs in this case went upon

the ground and made the location upon which they base their right of possession to the ground in controversy. At that time the litigation was pending in the District Court of Alaska in the case of Cook v. Klonos to determine the possessory right of the parties to that suit to this identical ground. With respect to the understanding of plaintiffs as to the status of the location at that time, there is the following recital in the record in this case:

"That at the time they [the plaintiffs] staked said claim No. 3 plaintiffs saw a dump or shaft débris near Ridenour's tent on No. 4, near the line of said No. 3; that at that time they knew that said claim No. 3 was within the boundaries of the land claimed to have been staked by the Dome Group Association, but that 'they did not believe that said association claim was valid in law, for the reason that, as they understood, it was located through the use of "dummies" and because they believed at that time that a discovery had to be made on each 20 acres of an association claim.'"

Plaintiffs in their brief in this case, referring to the evidence introduced in the trial court in support of their location, say:

"Plaintiffs, deeming it advisable to show also in their case in chief the invalidity of the Dome Group Association claim, proceeded as follows."

The brief then states that in the case of Cook v. Klonos the depositions of Barnette, Cook, and Ridenour had been taken by the plaintiffs in that case, and that Barnette and Ridenour had been called by the plaintiffs and gave oral testimony in the case, and that in this case plaintiffs read extracts from said depositions and from said oral testimony. It appears from the record that the introduction of parts of these depositions and testimony was over the objections of the defendants. From this statement and from the record it appears that plaintiffs, in support of their alleged possessory right, raised the question as to the validity of the prior location of the Dome Group Association claim, and introduced evidence from the case of Cook v. Klonos tending to show the invalidity of that claim. In other words, the plaintiffs, to overcome the obvious invalidity of their location on ground included within a prior subsisting location, and to justify their intrusion and trespass thereon, undertook in their case in chief in a suit in ejectment, and over the objections of the defendants, to show the invalidity of the defendants' prior location.

To meet this issue the defendants had no alternative but to introduce evidence to sustain the validity of the Dome Group Association claim, and accordingly they called J. C. Ridenour, who testified that under an agreement with one E. T. Barnette, who furnished the necessary supplies, he staked the Dome Group Association claim on the 23d and 24th of March, 1905, by setting out 26 stakes and blazing the lines between the stakes, posting notices, and otherwise marking the limits of the Association claim on the ground, so that its boundaries could be readily traced, and testified as to the recording of the notice of location on April 17, 1905, by Henry Cook, who was working with the witness in prospecting the claim, the sinking of a shaft on the claim, the discovery of gold in the shaft on the 15th of April, 1905, and the sinking of other shafts on the claim by himself and Cook. There were eight locators, and each had a one-eighth interest

in the claim. After putting down the first shaft, the witness had an arrangement with Barnette for sinking more holes and doing drift work, for which they were to receive an additional one-twelfth interest; but they had no understanding or agreement as to the interest Barnette should have in the property: and had no knowledge of any arrangement or agreement between Barnette and the other parties as to his interest in the property.

With respect to the location made by the plaintiffs the witness testified that on the 21st day of September, 1905, he was living on the lower end of the ground in dispute, No. 3, below Dome; had been living there since June 10, 1905, with Henry Cook. On that day (September 21st) he saw William Rooney, Gus Plaschlart, and Johnson on the property in controversy. The first he saw of them they were at the uphill lower end corner stake of the claim; that is, the northeast corner of claim No. 3, first tier. He noticed them working there. They appeared to be staking. They came by the tent a few minutes afterwards, where the witness was. The witness asked them what they were doing. They said they were staking 3. The witness was not positive who spoke first, but Rooney did most of the talking. He told them that they had better not locate the claim, as it was a part of the Dome Group. The witness thought it was Rooney who spoke up and wanted to know who the Dome Group was, or where it was, and the witness told him who claimed it; said it was Cook and himself and six others—he could not quite call all the names—but told them they could find the location notice up at 1, and that all the names would be on it. Then one of the parties asked the witness if they had ever done any work on the claim, and the witness said, "yes, they had a shaft at 1," and pointed to the shaft there on No. 4, just a few feet from the tent where the witness was standing. Plaschlart spoke up and made the remark that there would have to be work done on each and every 20 acres—something like that—the witness did not pay much attention to what he said. The witness said, "You better not stake, because it will do you no good," as they owned the ground and had complied with the law.

Henry Cook testified, on the part of the defense, that he applied to Barnette for the grubstake to prospect on Dome creek. Barnette agreed to put up the grub and furnish a boiler to prospect with, which he did. The witness and Barnette were to be locators in the claim. Each was to have a one-eighth interest. After they found that there was more work to be done, they were to have one-twelfth interest more; did not know what interest Barnette was to have. Witness testified substantially as did Ridenour as to the staking of the claim, the discovery of gold about April 15, 1905, in the shaft sunk by them on the claim, the appearance of the plaintiffs on the claim in September, 1905, and their staking of No. 3, saying that there must be a hole on each and every individual claim, and, as nothing was done on No. 3, they were going to take a chance. They gave no other reason for coming on the claim at that time.

Defendants also read from the evidence of E. T. Barnette, taken in the case of Cook v. Klonos, to the effect that the defendants Mc-

Ginn and Sullivan, who were not parties to that action, were to receive a one-third interest in the ground for looking after litigation and protecting the property. This agreement was made after the location and discovery made by Cook and Ridenour, and at the time when the property was in litigation.

[2] It appears from this testimony that when plaintiffs made their location on the ground in controversy in September, 1905, they did so upon the supposition that, the annual work not having been done by the defendants on the claim designated as No. 3 up to that time, it was open to relocation. This reason for making a location by plaintiffs appears to have been abandoned, probably for the reason that the law does not require the annual work on each 20-acre lot of an association claim. Miller v. Chrisman, 140 Cal. 440, 450, 73 Pac. 1083, 74 Pac. 444, 98 Am. St. Rep. 63; Whiting v. Straup, 17 Wyo. 1, 95 Pac. 849, 129 Am. St. Rep. 1093; Union Oil Co.; 25 Land Dec. Dept. Int. 351; Ferrell v. Hoge, 27 Land Dec. Dept. Int. 129. But, if it did, the defendants had the remainder of the year 1905 and all of 1906 to do the required annual work on the claim. Section 2324, R. S. (U. S. Comp. St. 1901, p. 1426); Malone v. Jackson, 137 Fed. 878, 70 C. C. A. 216. The ground was, therefore, not open to relocation on September 21, 1905, for either of these reasons.

[3] An entry upon a mining claim before a prior locator is in default cannot be made for the purpose of making a provisional location, to be valid or worthless according as the prior locator fails or not to do the annual work. Slavonian Mining Co. v. Perasich (C. C.) 7 Fed. 331, 333; Northmore v. Simmons, 97 Fed. 386, 392, 38 C. C. A. 211; Belk v. Meagher, 104 U. S. 279, 284, 26 L. Ed. 735; Clipper Mining Co. v. Eli Mining Co., 194 U. S. 220, 226, 227, 24 Sup. Ct. 632, 48 L. Ed. 944; Brown v. Gurney, 201 U. S. 184, 193, 26 Sup. Ct. 509, 50 L. Ed. 717.

[4] In Cook v. Klonos the defendants set up, among other defenses, the defense that plaintiffs' location of the Dome Group Association claim was not made by bona fide locators, but in the name of dummies and sham locators, in violation of the public land laws of the United States. This was not in fact a defense; but, as had been stated, the objection to the location was that Barnette had prior to the location made an agreement with six absent locators whereby he was to secure an interest in the locations in excess of that allowed by law. This was a question of fact, which this court determined adversely to the plaintiffs in that case. Plaintiffs in this case now rely upon the evidence that appeared to support that determination as establishing the invalidity of the location of the Dome Group of claims in this case; but the determination of this court in that case is not binding upon the defendants in this case, and whether the evidence was sufficient to establish the fact was for the jury in this case to determine.

[5] There was room for a difference of opinion as to the fact whether the agreement between Barnette and the six absent locators as to his share in their individual interest in the claim was made before or after the location of the claim and the discovery of gold there-

on. If made after the location and discovery, the agreement in no way affected the validity of the location of the associated claim. Smelting Co. v. Kemp, 104 U. S. 636, 654, 26 L. Ed. 875. The court was therefore right in refusing to withdraw this claim from the consideration of the jury, and the instructions of the court submitting the question to the jury was correct.

The second location, described as the Hastings-Stafford location, is a single claim of 20 acres, and is the ground in controversy. Richard Stafford was one of the defendants in the case of Cook v. Klonos, setting up in that case the right of possession acquired from Hastings, involved in this case. After the judgment in that case in the trial court in favor of the defendants in June, 1907, the defendants in this case purchased the Stafford right of possession to the ground in controversy, and have since held it. This Hastings-Stafford right of possession to the claim is prior in point of time to either the Rooney or the Dome Group Association location. It is based upon a location made on January 2, 1904, by one William Woodward, who staked the claim in the name of U. G. Hastings. At that time Hastings and one George Roth were partners, and Woodward had been "grubstaked" by Hastings, through Roth, his attorney in fact, and the location was made by Woodward under this grubstake agreement. The location notice was recorded on March 24, 1904. On September 2, 1904, Hastings, by Roth, his attorney in fact, gave an option agreement to Richard Stafford to purchase the location for $300, $50 of which was paid on the day of the agreement, and the remaining $250 was to be paid on September 2, 1905.

Stafford testified that in September, 1904, there was some discussion with Woodward about a discovery on the claim, and thereupon he went upon the claim, found the Hastings location notice, identified all the boundary and center stakes, followed blazed lines and prospected in a gulch or draw running across the lower end of the claim, and found some gold—particles of gold—not in each pan, but in some of the pans; went to the claim in June, 1905, found all the stakes distinctly marking the boundaries of the claim, and again panned and found colors of gold in the same gulch or draw. In September, 1905, Stafford exercised his right to purchase the claim under the agreement of September, 1904. He paid the balance of $250, and on September 8, 1905, received a deed from Hastings for the claim. In March, 1906, Stafford had the claim surveyed. He went to the claim with Woodward, who had originally staked the ground. Woodward pointed out the stakes, and they were the same stakes Stafford had seen in September, 1904, and June, 1905, with the exception of the northeast corner stake, which had disappeared. They set a temporary stake there, and about two weeks later went out again with the surveyor to the ground, and put a permanent stake in its place. In the meantime Stafford conveyed the claim to others, and by certain options and mesne conveyances Stafford's possessory right to the claim on September 12, 1908, became vested in the defendants Barnette, Ridenour, Cook, McGinn, and Sullivan.

Stafford appears from his testimony to have been a miner of ex-

perience in Dawson for several years prior to 1904, and since that year had been prospecting in the Fairbanks district. He testified that the discovery he made on the ground staked by Woodward for Hastings, taken in connection with the location of the ground with reference to the fact that gold had been discovered in paying quantities above and below, and within 100 feet of the northeast corner of the claim, would justify an ordinarily prudent man, not necessarily a skilled miner, to go ahead and spend money in the development of the ground.

It is recited in the record that:

"There was evidence proving that at the time the plaintiffs staked the ground in controversy they knew or could have known that it had previously been staked by Woodward for Hastings."

It is objected to this location that Hastings, the original locator, made no discovery on the claim, and without a discovery Hastings had nothing to convey to Stafford, and that Stafford had, therefore, no right of possession. This objection cannot be sustained, either upon the fact or the law.

[6] As to the fact: There was evidence tending to show that discoveries were made by Stafford on the claim in September, 1904, and in June, 1905, while the right of possession was still in Hastings under his option to purchase the claim from Hastings. This option ran for a year, from September 5, 1904, until September 5, 1905, when Stafford completed the purchase. If the jury believed that these discoveries were in fact made by Stafford while the right of possession was in Hastings, and while the former was prospecting the claim under Hastings' permission, the discoveries inured to the benefit of the location made by Hastings.

[7] As to the law: The location of mineral ground gives to the locator before discovery, and while he complies with the statutes of the United States and the state and local rules and regulations, the valuable right of possession against all intruders, and this right he can convey to another.

"Mineral ground covered by a valid location becomes segregated from the public domain, and is the property of the locator; and, so long as the locator complies with the laws of the United States and the state and local regulations, such locator has the exclusive right and enjoyment to all the surface included within the lines of the location against all the world, and during such time such ground so segregated is not open to location by another, and any relocation of such ground during such time is void." Syllabus by the Court in Swanson v. Kettler, 17 Idaho, 321, 105 Pac. 1059, affirmed by the Supreme Court in Swanson v. Sears, 224 U. S. 180, 32 Sup. Ct. 455, 56 L. Ed. 721; Becker v. Long (C. C. A.) 196 Fed. 721; Miller v. Chrisman, 140 Cal. 440, 450, 73 Pac. 1083, 74 Pac. 444, 98 Am. St. Rep. 63.

It follows that in any view of the fact of discovery, whether made by Hastings or Stafford, the former had the right of possession, which he could convey to the latter, and by such conveyance the latter could acquire the right of possession to the ground in controversy. The trial court was, therefore, right in refusing to withdraw the Stafford claim from the consideration of the jury, and in giving the instruction it did in submitting the question to the jury.

[3] It is contended by plaintiffs that the evidence shows that Hastings was a "professional staker," and that the whole proceeding on the part of Hastings and Stafford with respect to this location was purely speculative. This objection to the location was a question of fact for the jury, which the court properly submitted for its consideration. In Erhardt v. Boaro, 113 U. S. 527, 536, 5 Sup. Ct. 560, 565 (28 L. Ed. 1113), the Supreme Court said that:

"It would be difficult to lay down any rules by which to distinguish a speculative location from one made in good faith with a purpose to make excavations and ascertain the character of the lode or vein, so as to determine whether it will justify the expenditures required to extract the metal; but a jury from the vicinity of the claim will seldom err in their conclusions on the subject."

The questions we have discussed cover the material questions involved in the instructions of the court to the jury, to which objections were taken, and the questions involved in the instructions requested by the plaintiffs and refused by the court. We do not deem it necessary, therefore, to further consider them in the detail presented in the briefs.

Finding no error in the record, the judgment of the court below is affirmed.